1   BRUCE A. WAGMAN (CSB No. 159987)
    BWagman@rshc-law.com
2   RILEY SAFER HOLMES & CANCILA LLP
    456 Montgomery Street, 16th Floor
3   San Francisco, CA  94104
    Telephone:  (415) 275-8540
4   Facsimile:  (415) 275-8551

5   *Attorney for Proposed Defendant-Intervenors*
    *Humane World for Animals, Animal Legal*
6   *Defense Fund, Animal Equality,*
    *The Humane League, Farm Sanctuary,*
7   *Compassion in World Farming, Inc., and Animal*
    *Outlook*
8
    REBECCA CARY (CSB No. 268519)
9   rcary@humaneworld.org
    Humane World for Animals
10  1255 23rd St., NW, Suite 450
    Washington, D.C. 20037
11  Telephone:  (202) 676-2330
    Facsimile:  (202) 676-2357
12
    *Attorney for Proposed Defendant-Intervenor*
13  *Humane World for Animals*

14
15              UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
16

17  UNITED STATES OF AMERICA,

                  Plaintiff,              Case No. 2:25-cv-06230-MCS-AGR
18
          v.                              **MEMORANDUM OF POINTS
19                                        AND AUTHORITIES IN SUPPORT
    THE STATE OF CALIFORNIA;              OF PROPOSED DEFENDANT-
20  GAVIN C. NEWSOM, in his Official      INTERVENORS' UNOPPOSED
    Capacity as Governor of California;   MOTION TO INTERVENE**
21  KAREN ROSS, in her Official Capacity
    as Secretary of the California        The Honorable Mark C. Scarsi
22  Department of Food & Agriculture;     Date:  August 25, 2025
    ERICA PAN, in her Official Capacity as Time: 9:00 a.m.
23  Director of the California Department of Location: First Street Courthouse, 350
    Public Health; and ROB BONTA, in his  W. 1st Street, Courtroom 7C, 7th Floor,
24  Official Capacity as Attorney General of Los Angeles, California 90012
    California,                           Trial Date: None
25                                        Action Filed: July 9, 2025
                  Defendants.
26
27
28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     BACKGROUND .....................................................................................2

    A.    Passage of Proposition 2 and AB 1437................................................2

    B.    Passage of Proposition 12. ..................................................................3

    C.    The Interests of the Proposed Defendant-Intervenors. ........................4

III.    ARGUMENT .........................................................................................10

    A.    Proposed Defendant-Intervenors Are Entitled to Intervene As a Matter of Right...........................................................................................10

        1.    The Motion to Intervene is Timely............................................10

        2.    Proposed Defendant-Intervenors Have a Significantly Protectable Interest in Defending Proposition 12.....................11

        3.    Proposed Defendant-Intervenors' Interests Will Be Impaired If Plaintiff Succeeds in Invalidating Proposition 12. ...................13

        4.    Proposed Defendant-Intervenors' Interests Are Not Adequately Represented by Any of the Parties. ..........................................15

    B.    In the Alternative, Proposed Defendant-Intervenors Should Be Granted Permissive Intervention. ....................................................................19

IV.     CONCLUSION......................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*April in Paris v. Becerra*,
    2015 WL 2404620 (E.D. Cal. May 12, 2020) ..................................................... 24

*Asian Am. Rights Comm. v. Brown*,
    No. 12-517723 (Cal. Sup. Ct., San Francisco County) ........................................ 2

*Assoc. Dog Clubs of N.Y. v. Vilsack*,
    44 F. Supp. 3d 1 (D.D.C. 2014) ......................................................................... 23

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) .................................................................................... 21, 24

*Boot Barn, Inc. v. Bonta*,
    2023 WL5155878 (E.D. Cal. Aug. 10, 2023) ..................................................... 23

*Cal. Trucking Ass'n v. Becerra*,
    No. 318-CV-02458-BENBLM, 2019 WL 202313 (S.D. Cal. Jan.
    14, 2019) .................................................................................................... 19, 24

*Californians for Safe & Competitive Dump Truck Trans. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) ........................................................................... 19

*Chinatown Neighborhood Assoc. v. Brown*,
    No. 4:12-cv-03759 (N.D. Cal.) ............................................................................ 2

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ............................................................................. 23

*County of Orange v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986) ............................................................................. 13

*Cramer v. Brown*,
    No. 2:12-cv-03130 (C.D. Cal.) ............................................................................ 2

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds* by
    *Wilderness Soc'y*, 630 F.3d 1173 ............................................................... 20, 21

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ................................................................. 25

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ................................................................. 18

*Iowa Pork Producers Ass'n v. Bonta,*
    No. 2:21-CV-09940 (C.D. Cal. Dec. 16, 2021) (certiorari denied,
    2025 WL 1787818 (June 30, 2025)) ................................................. 2, 26

*JS West Milling Co., Inc. v. California,*
    No. 10-04225 (Cal. Sup. Ct. Fresno County) ........................................ 1

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ...................................................... 13, 14, 21

*Mendibourne v. McCamman,*
    No. 46349 (Cal. Sup. Ct. Lassen County) ............................................ 2

*Missouri v. Harris,*
    No. 2:14-cv-00341, Dkt. 57 (E.D. Cal. June 3, 2014) ..................... 2, 27

*N. Am. Meat Inst. v. Becerra,*
    420 F. Supp. 3d 1014 (C.D. Cal. 2019*)* ............................................. 26

*N. Am. Meat Inst. v. Becerra,*
    No. 2:19-cv-08569 (C.D. Cal. Oct. 4, 2019) (certiorari denied *sub*
    *nom. N. Am. Meat Inst. v. Bonta,* 141 S. Ct. 2854 (2021)) .................. 2

*Nat'l Audubon Soc'y v. Davis,*
    No. 3:98-cv-04610 (N.D. Cal.) ............................................................. 2

*Nat'l Meat Ass'n v. Harris,*
    No. 1:08-cv-01963 (E.D. Cal.) ............................................................. 1

*Nat'l Pork Prod. Council v. Ross,*
    598 U.S. 356 (2023) ............................................................................. 27

*Nat'l Pork Prod. Council v. Ross,*
    No. 3:19-cv-02324-W-AGH ........................................................... 2, 26

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) .................................... 15, 16, 17, 18

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO
INTERVENE

*S. Cal. Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) ............................................................ 14

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) .................................................... 15, 20

*Soltysik v. Padilla*,
  2015 WL 13819001 (C.D. Cal. 2015) ........................................ 16, 21

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2011) ...................................................... 17, 21

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .......................................................................... 20

*Triumph Foods, LLC v. Campbell*,
  742 F. Supp. 3d 63 (D. Mass. 2024) (appeal pending) ...................... 20

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ............................................ 14, 15, 25

*United States v. Washington*,
  86 F.3d 1499 (9th Cir. 1996) ............................................................ 13

*Vivid Entertainment, LLC v. Fielding*,
  2013 WL 1628704 (C.D. Cal. 2013) .................................................. 16

*Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*,
  684 F.3d 627 (9th Cir. 1982) ............................................................ 15

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173, 1177 (9th Cir. 2011)

**Statutes**

28 U.S.C. § 1331 .................................................................................. 25

Cal. Health & Safety Code § 25990 ...................................................... 3

Cal. Health & Safety Code § 25990(b)(3)-(4) ........................................ 4

Cal. Health & Safety Code § 25991 ...................................................... 3

Cal. Health & Safety Code § 25991(e)(4)-(5) ........................................ 4

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

Cal. Health & Safety Code § 25992 ..................................................................... 3

Cal. Health & Safety Code § 25993 ..................................................................... 3

Cal. Health & Safety Code § 25996 ................................................................. 3, 4

**Rules**

Fed. R. Civ. P. 24 ............................................................................... 1, 13, 21

Fed. R. Civ. P. 24(a) ....................................................................... 16, 17, 20, 25

Fed. R. Civ. P. 24(a)(2) ................................................................................ 13

Fed. R. Civ. P. 24(b) .............................................................................. 25, 26, 27

L.R. 7-3 ...................................................................................................... 1

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO
INTERVENE

## I.    **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Humane World for Animals ("Humane World"), the Animal Legal Defense Fund ("ALDF"), Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook (collectively "Proposed Defendant-Intervenors") respectfully request leave to intervene in the above-captioned matter, a constitutional challenge to California animal cruelty laws which Proposed Defendant-Intervenors were instrumental in passing and which, if overturned, will cause them and their members immediate and certain harm to their particular organizational interests and investments in preventing animal cruelty.[1] The outcome of this case will directly affect Proposed Defendant-Intervenors and their members and constituents, threatening the investment of millions of dollars of organizational funds and countless staff hours, and potentially undermining past and ongoing priority campaigns to protect farm animals.

Proposed Defendant-Intervenors can also provide critical and unique legal and factual perspectives on the matter, as they have done in prior similar matters.[2] This exact same group of Proposed Defendant-Intervenors intervened in three similar federal court challenges to the same California law at issue here, including two in this Court, in which they defended the same interests implicated here—all

---

[1] Counsel for Proposed Defendant-Intervenors met and conferred with counsel for the parties pursuant to L.R. 7-3 regarding the motion. Defendants have indicated that they do not oppose Proposed Defendant-Intervenors' motion to intervene. In response to Proposed Defendant-Intervenors' inquiry, counsel for Plaintiff has indicated that Plaintiff takes no position on this motion.

[2] For example, Proposed Defendant-Intervenor Humane World (under its former name, the Humane Society of the United States) has previously participated in many other federal and state cases that challenged animal protection laws in California, in cooperation with and without duplicating the State defendants' efforts. *See, e.g.*, *Nat'l Meat Ass'n v. Harris*, No. 1:08-cv-01963 (E.D. Cal.); *JS West Milling Co., Inc. v. California*, No. 10-04225 (Cal. Sup. Ct. Fresno County); *Cramer v. Brown*, No. 2:12-cv-03130 (C.D. Cal.); *Asian Am. Rights Comm. v. Brown*, No. 12-517723 (Cal. Sup. Ct., San Francisco County); *Nat'l Audubon Soc'y v. Davis*, No. 3:98-cv-04610 (N.D. Cal.); *Mendibourne v. McCamman*, No. 46349 (Cal. Sup. Ct. Lassen County); *Chinatown Neighborhood Assoc. v. Brown*, No. 4:12-cv-03759 (N.D. Cal.); *Missouri v. Harris*, No. 2:14-cv-00341 (E.D. Cal.).

the way to the Supreme Court.[3] Some of the Proposed Defendant-Intervenors have briefed the exact legal claim raised here—preemption by the federal Egg Products Inspection Act—in a previous case that challenged California's restrictions on sale of products from cruelly confined farm animals contained in AB 1437.[4]

Accordingly, as described more fully below, Proposed Defendant-Intervenors satisfy the standards for both intervention as a matter of right and permissive intervention, and request that their intervention be granted.

## II.    BACKGROUND

### A.    Passage of Proposition 2 and AB 1437

In 2008, California Proposition 2, titled the Prevention of Cruelty to Farm Animals Act, was overwhelmingly approved by voters, adding California Health & Safety Code Chapter 13.8, sections 25990-25994, to prohibit cruel confinement of farm animals raised in California. The Act prohibits the confinement of pregnant pigs, calves raised for veal, and egg-laying hens in a manner that does not allow them to turn around freely, lie down, stand up, or fully extend their limbs. Cal. Prop. 2 (2008), Section 3 (adding Cal. Health & Safety Code § 25990).[5]

In 2010, the California legislature enacted AB 1437, adding sections 25995-25997, with further amendments to these provisions made in 2013 (SB 667). As amended, these provisions prohibit a seller in California from selling a shelled egg

---

[3] *N. Am. Meat Inst. v. Becerra*, No. 2:19-cv-08569 (C.D. Cal. Oct. 4, 2019) (certiorari denied *sub nom. N. Am. Meat Inst. v. Bonta*, 141 S. Ct. 2854 (2021)); *Nat'l Pork Producers Council v. Ross*, Case No. 3:19-cv-02324 (S.D. Cal. Dec. 5, 2019) (lower and appellate court opinions dismissing case affirmed in *Nat'l Pork Prod. Council v. Ross*, 598 U.S. 356 (2023)); *Iowa Pork Producers Ass'n v. Bonta*, No. 2:21-CV-09940 (C.D. Cal. Dec. 16, 2021) (certiorari denied, 2025 WL 1787818 (June 30, 2025)).

[4] *Missouri v. Harris*, No. 2:14-cv-00341, Dkt. 57 (E.D. Cal. June 3, 2014) (granting Humane World, under its prior name the Humane Society of the United States, leave to intervene and file briefing in the case); Dkt. 72 (E.D. Cal. July 2, 2014) (amicus brief by ALDF, Animal Outlook under its prior name Compassion Over Killing, and Farm Sanctuary)

[5] As described in subsection B, section 25990 was amended by Proposition 12. The original text of Proposition 2 can be found in the Voter Guide. D. Bowen, Cal. Sec'y of State, California General Election—Official Voter Information Guide 82 (Nov. 4, 2008), https://vig.cdn.sos.ca.gov/2008/general/pdf-guide/vig-nov-2008-principal.pdf.

for human consumption, "if the seller knows or should have known that the egg is the product of an egg-laying hen that was confined on a farm or place that is not in compliance with animal care standards set forth in Chapter 13.8" (i.e., at the time, Proposition 2). Cal. Health & Safety Code § 25996.

### B.    Passage of Proposition 12.

On November 6, 2018, California Proposition 12, codified as the Prevention of Cruelty to Farm Animals Act ("Proposition 12" or "the Act"), was on the ballot in California as an initiated state statute and was overwhelmingly approved. Cal. Prop. 12 (2018), Sections 3-7 (amending Cal. Health & Safety Code §§ 25990-25993 and adding § 25993.1).[6] Proposition 12 further enhances Proposition 2's goals related to farm animal welfare by upgrading the earlier ballot initiative's standards. The Act provides specific numeric space standards, including prohibiting confinement of an egg-laying hen to an area with "less than 144 square inches of usable floorspace per hen" as of January 2020, and requiring "cage-free housing" as defined by the United Egg Producers' Animal Husbandry Guidelines for U.S. Egg-Laying Flocks: Guidelines for Cage-Free Housing as of January 2022. Cal. Health & Safety Code § 25991(e)(4)-(5) (as amended). Proposition 12 also prohibits, independently from the prohibition contained in AB 1437 (Cal. Health & Safety Code § 25996), the in-state sale of products from animals raised in this manner, including shell eggs and liquid eggs. Cal. Health & Safety Code § 25990(b)(3)-(4) (as amended).

The express purpose of Proposition 12 is:

> . . . to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California.

---

[6] The full text of Proposition 12 can be found in the 2018 Text of Proposed Laws document. A. Padilla, Cal. Sec'y of State, California General Election—Text of Proposed Laws 87-90 (Nov. 6, 2018), https://vig.cdn.sos.ca.gov/2018/general/pdf/topl.pdf.

Case No. 2:25-cv-06230-MCS-AGR

1  Proposition 12 § 2.

2  ### C.   The Interests of the Proposed Defendant-Intervenors.

3      Proposed Defendant-Intervenor Humane World (formerly known as the

4  Humane Society of the United States) is a national nonprofit animal protection

5  organization headquartered in Washington, D.C., with millions of members and

6  constituents, including almost two million members and constituents in California.

7  Declaration of Chris Holbein ("Holbein Decl.") ¶ 2. Humane World actively

8  advocates against inhumane practices that harm farm animals, including veal

9  calves, breeding pigs, and egg-laying hens, and its Farm Animal Protection

10  campaign works to inform its members and the public about the threats caused by

11  such practices. *Id*. ¶ 3. To advance these goals, Humane World was the primary

12  author and a chief proponent of both Proposition 2 and Proposition 12 and spent

13  significant resources to advance these measures. For example, it spent significant

14  resources ensuring that Proposition 12's language is consistent with longstanding

15  judicial and administrative understandings of the scope and effect of federal law,

16  and the division between state and federal authority over humane treatment of farm

17  animals. Humane World also expended significant resources to help ensure the

18  passage of AB 1437 and work on subsequent amendments. *Id*. ¶¶ 4-6. Humane

19  World has also spent considerable legal resources and staff time defending

20  Proposition 12 and AB 1437 as a Defendant-Intervenor in several federal court

21  challenges and has participated in the comment periods for the state regulatory

22  process relating to Proposition 12. *Id*. ¶¶ 5-6.

23      Proposed Defendant-Intervenor ALDF was a registered supporter and active

24  proponent of Proposition 12. Declaration of Caitlin Hawks ("Hawks Decl.") ¶¶ 7-8.

25  It has also filed *amicus curiae* briefs in defense of Proposition 12, AB 1437 and

26  other similar laws. *Id*. ¶ 4. ALDF is a national nonprofit animal protection

27  organization founded in 1979 that uses education, public outreach, investigations,

28  legislation, and litigation to protect the lives and advance the interests of animals,

including those raised for food. *Id*. ¶ 2. Incorporated in California, ALDF is supported by hundreds of dedicated volunteer attorneys and more than 300,000 members nationwide, including approximately 20,406 in California. *Id*. ALDF files high-impact lawsuits to protect animals from harm, provides free legal assistance and training to prosecutors in their fight against animal cruelty, supports animal protection legislation, and provides resources and opportunities to law students and professionals to advance the field of animal law. *Id*. For decades, ALDF has been actively involved in matters pertaining to the protection and humane treatment of animals used for meat, eggs, and dairy products in California. *Id*. ¶¶ 3-6. ALDF has directed substantial time and organizational resources towards this goal, up to and including its significant devotion of resources and staff time to supporting Proposition 12 and AB 1437, intervening in three federal court challenges to defend Proposition 12, and participating in the state's rulemaking process related to Proposition 12. *Id*. ¶¶ 4, 7-8.

Proposed Defendant-Intervenor Animal Equality is an international nonprofit animal protection organization with its U.S. headquarters in Los Angeles, California. Declaration of Sharon Núñez ("Núñez Decl.") ¶ 2. The organization has over 220,500 supporters nationwide, roughly 29,000 of whom reside in California. *Id*. Animal Equality's mission is to end cruelty to farmed animals. *Id*. ¶ 3. To that end, Animal Equality expends significant resources to educate consumers about the inhumane treatment of animals inside industrial agriculture operations and to urge governments and corporations to implement meaningful protections for these animals—particularly in regard to the conditions in which they are confined. *Id*. ¶ 4. Recognizing that cruel conditions of confinement are especially widespread in the egg, pork, and veal industries, Animal Equality has dedicated special attention to legal and political reform in these sectors. *Id*. ¶ 5. Through petitions, social media, films, newsletters, undercover investigations, email alerts, and legal advocacy, Animal Equality mobilizes its supporters to manifest a world in which all animals

are respected and protected. *Id*. ¶ 3. Animal Equality also intervened in three federal court challenges to defend Proposition 12, and participated in the regulatory comment process. *Id*. ¶ 8.

Proposed Defendant-Intervenor The Humane League is a nonprofit animal protection organization organized under the laws of Pennsylvania, with over 500,000 supporters across the United States, including over 60,000 supporters in California. Declaration of Hannah Truxell ("Truxell Decl.") ¶ 2. The Humane League exists to end the abuse of animals raised for food through institutional and individual change. *See id*. ¶ 3. Institutionally, The Humane League works to influence the world's food companies to create and implement animal welfare policies that abolish the worst forms of abuse and reduce the suffering of billions of animals. *Id*. ¶ 3. The Humane League also works to enact laws that ban inhumane treatment of farm animals. *Id*. The Humane League educates its supporters, consumers, and the general public about the impact of farming practices on animal welfare, individual and public health, and the environment. *Id*. In addition, the Humane League has been a Defendant-Intervenor in three federal court challenges to Proposition 12, and participated in the comment process for state regulations. *Id*. ¶ 4.

Proposed Defendant-Intervenor Farm Sanctuary is a national non-profit corporation organized pursuant to the laws of the state of Delaware, with its principal place of business in Watkins Glen, New York. Declaration of Gene Baur ("Baur Decl.") ¶ 3. Farm Sanctuary is a farm animal rescue and protection organization dedicated to ending the suffering of animals raised for food. *Id*. ¶ 4. The organization has over one million constituents nationwide, including approximately 80,000 in California. *Id*. ¶ 3. Farm Sanctuary advocates against farm animal cruelty, educating the public about farm animal issues. *Id*. ¶ 4. Farm Sanctuary has committed resources to farm animal protection ballot initiatives, including California's Proposition 12. *Id*. ¶ 5. In addition to gathering signatures to

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

qualify Proposition 12 for the ballot and urging its supporters to help gather signatures, Farm Sanctuary committed human and financial resources to producing videos encouraging voters to support Proposition 12, which were promoted across Farm Sanctuary's social media platforms. *Id*. Farm Sanctuary also committed resources to educating its constituents and members of the public about Proposition 12 through e-mail communications and social media posts encouraging support of Proposition 12. *Id*. Farm Sanctuary has been a Defendant-Intervenor in three federal court challenges to Proposition 12 and has actively participated in the regulatory comment process. *Id*.

Proposed Defendant-Intervenor Compassion in World Farming, Inc. ("Compassion") is a national non-profit corporation organized pursuant to the laws of Delaware. Declaration of Matthew Dominguez ("Dominguez Decl.") ¶ 3. Compassion is an animal protection organization dedicated to ending factory farming and the most inhumane farming practices. *Id*. ¶ 4. The organization has over 250,000 members and supporters, including over 10,000 California residents. *Id*. ¶ 3. Compassion works to instill and promote more humane farming practices through corporate engagement and by providing public awareness on legislative, regulatory, and industry issues relevant to its mission. *Id*. Compassion advocated for Proposition 12 through employee door-to-door canvassing and media interviews, and has been a Defendant-Intervenor in the three federal court challenges to Proposition 12, and has actively participated in the regulatory process through submitting comments. *Id*. ¶ 2, 5-6.

Proposed Defendant-Intervenor Animal Outlook (formerly known as Compassion over Killing) is a nonprofit organization incorporated in Delaware with hundreds of thousands of supporters across the US, including California. Declaration of Benjamin Williamson ("Williamson Decl.") ¶¶ 3-4. Animal Outlook's organizational mission is to strategically challenge animal agribusiness and disseminate information to empower people to choose vegan diets. *Id*. ¶ 5. In

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

furtherance of that goal, Animal Outlook advocates against government policies that encourage or allow cruelty to farmed animals; conducts public education on the realities of industrialized animal agriculture; and coordinates public campaigns to encourage the adoption of vegan diets. *Id.* ¶ 6. Animal Outlook spent resources to support AB 1437, mobilized voters to support Proposition 12, has been a Defendant-Intervenor in three federal court challenges to Proposition 12, and has been an active participant in the related state regulatory process. *Id.* ¶¶ 7-9.

In furtherance of these organizations' interests, Proposed Defendant-Intervenors expended time and resources toward the passage of Proposition 12, with Proposed Defendant-Intervenor Humane World as its primary author. Holbein Decl. ¶ 6. Proposed Defendant-Intervenors invested substantial organizational resources into drafting the Act, collecting ballot initiative signatures, and mobilizing support for its passage. *See, e.g.*, Holbein Decl. ¶ 6; Hawks Decl. ¶¶ 7-8; Núñez Decl. ¶¶ 6-7; Truxell Decl. ¶¶ 4-5; Baur Decl. ¶ 5; Dominguez Decl. ¶¶ 5-6; Williamson Decl. ¶¶ 7-9. In addition, all Proposed Defendant-Intervenors have defended Proposition 12 as Defendant-Intervenors in three prior federal court challenges to the law and actively participated in the state's regulatory process by submitting comments. *Id.*; *see supra* note 3 (listing cases).

Several of the Proposed Defendant-Intervenors were also instrumental in the passage of Proposition 2 and spent significant resources in subsequently promoting the passage of AB 1437 by the California legislature, as well as subsequently defending those measures in court. Holbein Decl. ¶¶ 4-5; Williamson Decl. ¶ 7; Hawks Decl. ¶ 4.

Invalidation of Proposition 12 and AB 1437 would also impede and render worthless these organizations' longstanding investments of financial and staff resources in state laws banning the sale of other cruelly-produced goods, including shark fins, foie gras, fur, and horse meat—all of which Humane World and many of the other Proposed Defendant-Intervenors have repeatedly defended in public

campaigns and litigation. *E.g.*, Holbein Decl. ¶¶ 7-8; Hawks Decl. ¶¶ 3-6; Núñez Decl. ¶¶ 3-5; Truxell Decl. ¶ 3. A loss here for California would nullify years of charitable investments and require Proposed Defendant-Intervenors to start over with new investments of financial and human resources promoting substitute legislation or administrative action to address these concerns. Holbein Decl. ¶ 9; Hawks Decl. ¶ 10; Núñez Decl. ¶ 8; Truxell Decl. ¶ 6; Baur Decl. ¶ 6; Dominguez Decl. ¶ 7; Williamson Decl. ¶ 10. Proposed Defendant-Intervenors thus have direct and substantial interests in the outcome of this litigation.

Further, Proposed Defendant-Intervenors' interests in the subject matter of this litigation may not be adequately represented by California, which represents all stakeholders, including the agriculture and retail industries. That is, while Proposed Defendant-Intervenors' entry into the case will not in any way enlarge the issues before the Court, Proposed Defendant-Intervenors will likely make arguments that California will not make. California must balance competing political and economic constraints in defending the law. For example, California may not want to argue that selling eggs from hens raised in cages is inherently cruel, since the State previously allowed the sale of those products. By contrast, Proposed Defendant-Intervenors have supported laws like Proposition 12 and can bring a perspective on those laws that the State may not have. Proposed Defendant-Intervenors also can assist the Court in its analysis because they have extensive experience, not shared by California, regarding the cruelty inherent in the confinement practices covered by Proposition 12. As advocates for farm animals for several decades, Proposed Defendant-Intervenors will also bring a wealth of expertise with respect to animal cruelty legislation like Proposition 12 and also have a wealth of knowledge on animal welfare issues that the State may not possess. *See, e.g.*, Holbein Decl. ¶¶ 3-4; Hawks Decl. ¶¶ 2-6, 11; Núñez Decl. ¶¶ 3-5; Truxell Decl. ¶ 3; Baur Decl. ¶ 4; Dominguez Decl. ¶ 4; Williamson Decl. ¶¶ 5-6. Thus, Proposed Defendant-Intervenors will bring important facts and unique legal arguments to the Court in

1    this litigation.

2          Finally, in the interest of judicial economy, the Proposed Defendant-

3    Intervenors are willing to be subject to the same briefing schedule as the

4    Defendants, ensuring that intervention does not cause prejudice to any party related

5    to scheduling, or any undue delay.

6    **III.    ARGUMENT**

7          **A.    Proposed Defendant-Intervenors Are Entitled to Intervene As a Matter of Right.**

8

9          Proposed Defendant-Intervenors easily meet the standard for intervention as

10   of right. In the Ninth Circuit, an application for intervention under Rule 24(a)(2) is

11   governed by a four-part test:

12          (1) [T]he motion must be timely; (2) the applicant must
            claim a "significantly protectable" interest relating to the
13          property or transaction which is the subject of the action;
            (3) the applicant must be so situated that the disposition of
14          the action may as a practical matter impair or impede its
            ability to protect that interest; and (4) the applicant's
15          interest must be inadequately represented by the parties to
            the action.
16

17   *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440-41 (9th Cir. 2006)

18   (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on*

19   *other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir.

20   2011)). The requirements of Rule 24 are to be "construed broadly in favor of

21   intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

22          **1.    The Motion to Intervene is Timely.**

23          "In determining whether a motion for intervention is timely, we consider

24   three factors: '(1) the stage of the proceeding at which an applicant seeks to

25   intervene; (2) the prejudice to other parties; and (3) the reason for and length of the

26   delay.'" *County of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986) (quoting

27   *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.

28   1997)). Proposed Defendant-Intervenors easily satisfy the "timeliness" factor, as the

- 10 -                                    Case No. 2:25-cv-06230-MCS-AGR

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

motion to intervene is being filed within mere weeks after the present lawsuit was filed, and before any other filings have been filed by either party, or any substantive decisions have been rendered. Upon learning of the lawsuit, Proposed Defendant-Intervenors acted as quickly as possible to seek party status so that they might protect their substantial interests in this matter. To conserve the Court's and the parties' resources, Proposed Defendant-Intervenor Humane World assembled a coalition of six other groups to file together and avoid multiple intervention motions, as it has done in prior federal cases challenging Proposition 12. Moreover, there is clearly no prejudice to any party by granting Proposed Defendant-Intervenors' motion to intervene at this early stage in the proceedings. Plaintiff filed its Complaint in this Court on July 9, 2025. No hearing has been held, nor has an Answer or dispositive motion been filed yet.

### 2.    Proposed Defendant-Intervenors Have a Significantly Protectable Interest in Defending Proposition 12.

Proposed Defendant-Intervenors also have a "significantly protectable interest relating to the . . . transaction which is the subject of the action." *Lockyer*, 450 F.3d at 440-41. The interest requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quotation omitted), and applicants need not demonstrate a "specific legal or equitable interest" in the suit. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Instead, a proposed intervenor need only show: "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims," *i.e.*, that the "resolution of the plaintiff's claims actually will affect the applicant." *Id.* (quotation omitted).

Here, Proposed Defendant-Intervenors undeniably have a "significant protectable interest" in upholding Proposition 12 because Proposed Defendant-

Intervenors were architects, supporters, and chief proponents and defenders of the initiative. *See* Holbein Decl. ¶¶ 6-7; Hawks Decl. ¶¶ 8-10; Núñez Decl. ¶¶ 6-8; Truxell Decl. ¶¶ 4-5; Baur Decl. ¶¶ 5-6; Dominguez Decl. ¶¶ 5-7; Williamson Decl. ¶¶ 7-10. Some of these groups were also proponents of Proposition 2 and actively supported the passage of AB 1437 and the defense of those measures. *See, e.g.*, Holbein Decl. ¶¶ 4-5; Williamson Decl. ¶ 7; Hawks Decl. ¶ 4. As the Ninth Circuit and other federal courts have repeatedly held, proponents and active supporters of legislative measures, like Proposed Defendant-Intervenors here, have a sufficient "protectable interest" to intervene to defend those measures. Specifically, a "public interest group [i]s entitled as a matter of right to intervene in an action challenging the legality of a measure which it has supported." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *see also Prete v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006) (same; "main supporter" of legislation); *Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.3d 627, 630 (9th Cir. 1982) ("public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a)"); *Soltysik v. Padilla*, 2015 WL 13819001, at *2 (C.D. Cal. 2015) (permitting ballot initiative proponent group to intervene to defend the initiative); *Vivid Entertainment, LLC v. Fielding*, 2013 WL 1628704, at *4 (C.D. Cal. 2013) (same). There is no reason to depart from this Circuit's longstanding precedent here.

Proposed Defendant-Intervenors were undoubtedly the "main supporter[s] and chief proponents of" Proposition 2, Proposition 12 and AB 1437. *Prete*, 438 F.3d at 955; *see also Soltysik*, 2015 WL 13819001 at *2. They directly assisted in drafting the language of Proposition 12 and promoted passage of AB 1437, and expended substantial resources to do so. *See* Holbein Decl. ¶ 6; Hawks Decl. ¶¶ 7-9; Núñez Decl. ¶¶ 6-8; Truxell Decl. ¶¶ 4-5; Baur Decl. ¶ 5; Dominguez Decl. ¶¶ 5-6; Williamson Decl. ¶¶ 7-9. For example, these groups contributed significant staff time to gather signatures; to promote the measure in the media and at events; to set

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

up and execute text, email, and social media campaigns; to gather endorsements; and following passage, to subsequently defend it in court. Holbein Decl. ¶ 6; Hawks Decl. ¶¶ 8-9; Núñez Decl. ¶ 6; Truxell Decl. ¶ 4; Baur Decl. ¶ 5; Dominguez Decl. ¶¶ 5-6; Williamson Decl. ¶¶ 8-9. The financial expenditures for the Proposed Defendant-Intervenors in promoting Proposition 12 ranged from tens of thousands to millions of dollars. *E.g.*, Holbein Decl. ¶ 6; Hawks Decl. ¶ 8; Núñez Decl. ¶ 7; Truxell Decl. ¶ 5. Moreover, several of them similarly were the "main supporters and chief proponents of" Proposition 2 and AB 1437, the measures preceding Proposition 12, having spent many millions of dollars campaigning, lobbying, testifying, performing public outreach, and defending these measures in court. *Prete*, 438 F.3d at 955; Holbein Decl. ¶¶ 4-5; Williamson Decl. ¶ 7; Hawks Decl. ¶ 4. These significant financial and other investments in these measures are clearly protectable interests.

### 3. Proposed Defendant-Intervenors' Interests Will Be Impaired If Plaintiff Succeeds in Invalidating Proposition 12.

Proposed Defendant-Intervenors also satisfy the intervention requirements because the "disposition of the action may as a practical matter impair or impede" Proposed Defendant-Intervenors' "ability to protect [their] interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)); Fed. R. Civ. P. 24(a). Rule 24(a) does not require that the applicant's interest be actually or legally impaired, only that the applicant "be substantially affected in a practical sense." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2011) (quotation omitted). Here, Plaintiff's lawsuit threatens to undo the results of Proposed Defendant-Intervenors' extensive and costly advocacy efforts with respect to the support and passage of Proposition 12.

Proposition 12 is a critical component of the Proposed Defendant-

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

Intervenors' multi-decade campaign to eradicate extreme confinement practices. Protecting farm animals is central to each of their missions, and in furtherance of these missions the Proposed Defendant-Intervenors spent significant time and resources to secure passage of Proposition 12 and its defense in court; some of the Proposed Defendant-Intervenors were also proponents of Proposition 2 and major supporters of AB 1437. *See, supra* subsection III.A.2; Holbein Decl. ¶¶ 4-7; Hawks Decl. ¶¶ 4, 8-9; Núñez Decl. ¶¶ 3-7; Truxell Decl. ¶¶ 3-5; Baur Decl. ¶¶ 3-5; Dominguez Decl. ¶¶ 4-6; Williamson Decl. ¶¶ 5-9. If the Court enjoins Proposition 12 and AB 1437, Defendant-Intervenors' extensive advocacy, legal, staffing, and monetary commitments to the passage and preservation of Proposition 12 would be nullified. *See, e.g.*, Holbein Decl. ¶¶ 7-9; Hawks Decl. ¶¶ 7-10; Núñez Decl. ¶ 8; Truxell Decl. ¶ 6; Baur Decl. ¶¶ 5-6; Dominguez Decl. ¶ 7; Williamson Decl. ¶ 10; *see also Prete*, 438 F.3d at 945 ("[A]n adverse court decision on such a [ballot] measure may, as a practical matter, impair the interest held by the public interest group.") (citing *Sagebrush Rebellion*, 713 F.2d at 528 (finding there was "no serious dispute" that applicant's interest might be impaired if proponents of measure were not allowed to intervene in challenge to that measure)); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (finding impairment where action could lead to reversal of administrative decision actively supported by applicants for intervention).

If the Court provides the relief requested by Plaintiff, Proposed Defendant-Intervenors would need to start over with new investments of staff and financial resources to secure alternative farm animal protections. Holbein Decl. ¶¶ 7-9; Hawks Decl. ¶¶ 7-10; Núñez Decl. ¶ 8; Truxell Decl. ¶ 6; Baur Decl. ¶¶ 5-6; Dominguez Decl. ¶ 7; Williamson Decl. ¶ 10. These efforts could include drafting and advocating for new legislation, reactivating grassroots engagement of members and supporters, and conducting investigations into farm animal practices to expose cruel confinement practices and generate support for protective measures. *Id.* That

- 14 -

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

process would take years or even a decade and likely more millions of dollars of precious charitable donations and other financial resources.

The invalidation of Proposition 12 and AB 1437 could also harm the Proposed Defendant-Intervenors' efforts to pass and preserve sales bans in other states, which would undercut Proposed Defendant-Intervenors' institutional campaigns and could lead to additional cruel treatment of farm animals who are raised in extreme confinement. *See Cal. Trucking Ass'n v. Becerra*, No. 318-CV-02458-BENBLM, 2019 WL 202313, at *2 (S.D. Cal. Jan. 14, 2019) (citing *Allied Concrete,* 904 F.3d 1053, 1068 (S.D. Cal. 2018)); *Californians for Safe & Competitive Dump Truck Trans. v. Mendonca,* 152 F.3d 1184, 1190 (9th Cir. 1998) ("invalidation of the . . . law being challenged would impair [intervenor] and its members' interests."). For example, a negative outcome here could impact the implementation and enforcement of similar laws in other states, such as Question 3 in Massachusetts, a ballot initiative passed in 2016 that, like Proposition 12, prohibits the sale of pork, veal, and eggs from animals held in extreme confinement. *See* Mass. Gen. Laws Ann. ch. 129 App. §§ 1 *et seq*. A challenge to this law is currently on appeal in the First Circuit. *See Triumph Foods, LLC v. Campbell*, 742 F. Supp. 3d 63 (D. Mass. 2024) (appeal pending).

### 4. Proposed Defendant-Intervenors' Interests Are Not Adequately Represented by Any of the Parties.

Proposed Defendant-Intervenors' interests diverge in important respects from those of the State Defendants and are not "adequately represented by existing parties." Fed. R. Civ. P. 24(a). Specifically, while the State Defendants' interest is in the administration of their legal obligations on behalf of the general public, including the agriculture and retail industries, Proposed Defendant-Intervenors have a narrower interest in advocating for prevention of cruelty to animals and the health and safety interests of their members.

The adequacy test is a low bar to intervention: an applicant need only

demonstrate that representation of its interest by existing parties "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 528 n.10 (1972). "The burden of making this showing is minimal." *Sagebrush Rebellion*, 713 F.2d at 528. In determining whether a proposed intervenor is adequately represented, the Court should

> consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceeding that the other parties would neglect.

*Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1498-99 (9th Cir. 1995), *abrogated on other grounds* by *Wilderness Soc'y*, 630 F.3d 1173.

The Ninth Circuit has granted intervention in many instances where, as here, the proposed intervenors have an interest that is different than that of the government, the result of which is that the government may not make all the proposed intervenor's arguments. *Lockyer*, 450 F.3d at 440-41 (granting intervention where government defendant could offer limiting construction in defense of state); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d at 822 (government did not adequately represent interests of building trade association because of government's broader range of considerations); *Forest Conservation Council*, 66 F.3d at 1499 (noting that the federal government represents a "broader view" than the interest of a state and county); *Soltysik*, 2015 WL 13819001 at *2 (when nonprofit organization "presented different and sometimes more thorough arguments" than the state, and state had in past been adverse to proposition and indicated it might not fully defend the measure, that was more than sufficient to show the state "*may* not adequately represent" the nonprofit's interests (emphasis in original)). As the Supreme Court has noted, Rule 24's test typically presents a "minimal challenge"; where the "absentee's interest is similar to, but not identical with, one of the parties," and a party seeking intervention "seek[s] to give voice to a

- 16 -

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

different perspective," granting intervention is appropriate. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195-98 (2022).

Proposed Defendant-Intervenors' interests are not fully coextensive with those of State Defendants in this litigation. The State Defendants' primary interests are in the administration of their legal obligations, as they are charged with enforcing enacted ballot measures and laws enacted by the California legislature on behalf of the public at large—including agricultural and retail stakeholders and others who oppose Proposition 12 and AB 1437. The state government has no specific mandate to advocate for the humane treatment of animals, nor does it represent humane interests above others. The State Defendants' interests may also be motivated by unrelated factors, including financial, political, or other pressures. On the other hand, defense of Proposition 12 and AB 1437 is central to the basic missions of Proposed Defendant-Intervenors, to prevent and prohibit egregious farm animal cruelty. *See* Holbein Decl. ¶ 3; Hawks Decl. ¶¶ 2-3; Núñez Decl. ¶ 3; Truxell Decl. ¶ 3; Baur Decl. ¶ 4; Dominguez Decl. ¶ 4; Williamson Decl. ¶ 5.

While both the Defendants and the Proposed Defendant-Intervenors have an interest in preserving Proposition 12, the Proposed Defendant-Intervenors' interests are far broader. As described above, the outcome of this litigation has implications for the Proposed Defendant-Intervenors' efforts to preserve, support, and advocate for existing protections for egg-laying hens and related sales bans *throughout the country*; all interests that Defendants do not possess, given that they only represent the state of California. Thus, beyond mere defense of the law, the Proposed Defendant-Intervenors are intervening because of the potentially precedential nature of this case, its potential to upend long-understood frameworks for state and federal authority over humane matters, and the impact it could have on their missions and their long-standing investments of time and resources in other humane laws throughout the US. *See, e.g.*, *Boot Barn, Inc. v. Bonta*, 2023 WL5155878, at *3 (E.D. Cal. Aug. 10, 2023) (granting Humane World and others intervention as of

right where California could not adequately represent their interests, because "they are advocacy organizations whose operations and memberships go beyond California's borders" and "whose goals go beyond any one state's laws"); *Assoc. Dog Clubs of N.Y. v. Vilsack*, 44 F. Supp. 3d 1, 6-7 (D.D.C. 2014) (granting Humane World intervention as of right where USDA "might not defend" rule as vigorously, and Humane World had a separate interest in "furthering its investigatory and information-dissemination programs that is not equivalent to the government's broader concerns"). While the State Defendants can simply advocate for any ruling that preserves Proposition 12 and AB 1437, the Proposed Defendant-Intervenors intend to advocate for specific rulings, including specific interpretations of the Egg Products Inspection Act ("EPIA"), that would help preserve similar laws. Additionally, the Court's interpretation of the EPIA would affect the direction of the work that Proposed Defendant-Intervenors can do in the future to protect farm animals. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("'[T]he government's representation of the public interest may not be identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. Nat'l Park Serv.,* 604 F.3d 1192, 1199 (10th Cir. 2010)); *Cal. Trucking Ass'n*, 2019 WL 202313, at *3 ("courts recognize that the interests of . . . intervenors in protecting their members are more "narrow" and "parochial" than California State officials' broad and more abstract interest in defending the laws of the State"); *April in Paris v. Becerra*, 2015 WL 2404620, at *4 (E.D. Cal. May 12, 2020) (granting intervention as of right to Humane World and others where California's interpretation of sales ban of crocodilian parts differed from that of intervenors, and thus would not adequately represent their interests).

Moreover, given their wealth of experience in litigating and advocating for the humane treatment of farm animals including egg-laying hens, and working to enforce anti-cruelty laws, Proposed Defendant-Intervenors bring to bear extensive

- 18 -

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

factual and legal knowledge that are not shared in full by the State Defendants. For example, some of the Proposed Defendant-Intervenors have extensive experience with advocacy before the U.S. Department of Agriculture through, e.g., petitions and rulemaking comments, which has given them unique insights into the agency's practices and implementation of laws like the EPIA. *E.g.,* Holbein Decl. ¶ 3. Thus, the Proposed Defendant-Intervenors "seek to give voice to a different perspective"—one that centers on farm animal protection, specifically for egg-laying hens in this case. *Berger*, 597 U.S. at 198.

The Proposed Defendant-Intervenors meet the "minimal" showing necessary on this factor, *id.* at 195-96 (quoting *Trbovich*, 404 U.S. at 538 n.10), and satisfy all other requirements under Rule 24(a). The Court should therefore grant the Proposed Defendant-Intervenors' motion to intervene as of right.

### B.   In the Alternative, Proposed Defendant-Intervenors Should Be Granted Permissive Intervention.

While the Proposed Defendant-Intervenors satisfy the criteria for intervention under Rule 24(a), in the alternative, this Court should exercise its discretion to permit the applicants to intervene permissively under Rule 24(b). A court may grant permissive intervention "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d at 403 (citations omitted). This Court has an independent ground for jurisdiction based on the federal preemption questions raised in the Complaint, *see* 28 U.S.C. § 1331, and as discussed above, Proposed Defendant-Intervenors' application is timely and will not prejudice the parties or cause any undue delay. *See, e.g., Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir. 2011) ("the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising

1    new claims").

2    Most importantly, Proposed Defendant-Intervenors' defenses and the main

3    action clearly have "question[s] of law or [] question[s] of fact in common." *Id.*

4    The Proposed Defendant-Intervenors' defenses are based entirely on legal

5    arguments as to the insufficiency of the Plaintiff's claims in the Complaint; they do

6    not seek to raise additional claims other than arguments in response to Plaintiff's.

7    Thus, Proposed Defendant-Intervenors should be allowed to intervene

8    permissively under Rule 24(b) even if intervention as of right is not granted.

9    Indeed, in three prior federal cases challenging Proposition 12, including before this

10   Court, this same group of Proposed Defendant-Intervenors has previously been

11   granted intervention. *See* Order Granting Defendant-Intervenors' Motion to

12   Intervene, *Nat'l Pork Prod. Council v. Ross*, No. 3:19-cv-02324-W-AGH at ECF

13   Dkt. No. 16 (S.D. Cal. Jan. 9, 2020); *N. Am. Meat Inst. v. Becerra*, 420 F. Supp. 3d

14   1014, 1021 (C.D. Cal. 2019*); Iowa Pork Producers Ass'n v. Bonta*, No. 2:21-cv-

15   09940-CAS at ECF Dkt. No. 84 (C.D. Cal. Feb. 28, 2022).[7]

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25

26   [7] The Proposed Defendant-Intervenors, as intervenors, ultimately successfully
     defended the constitutionality of Proposition 12 before the Supreme Court. *See*
27   *Nat'l Pork Prod. Council v. Ross*, 598 U.S. 356 (2023). In addition, Humane World
     was also granted intervention in a case challenging AB 1437's constitutionality.
28   *Missouri v. Harris*, No. 2:14-cv-00341, Dkt. 57 (E.D. Cal. June 3, 2014) (order
     granting Humane World permissive leave to intervene per Rule 24(b)).

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

## IV.  __CONCLUSION__

For the foregoing reasons, Proposed Defendant-Intervenors' motion to intervene should be granted.

Dated: July 28, 2025

RILEY SAFER HOLMES & CANCILA LLP


By: */s/ Bruce A. Wagman*
Bruce A. Wagman (CSB No. 159987)
bwagman@rshc-law.com

*Counsel for Proposed Defendant-Intervenors*

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Proposed Defendant-Intervenors, certifies that this brief contains 6,985 words, which:

_X_  complies with the word limit of L.R. 11-6.1

Dated: July 28, 2025                    RILEY SAFER HOLMES & CANCILA LLP

By: */s/ Bruce A. Wagman*
    Bruce A. Wagman (CSB No. 159987)
    bwagman@rshc-law.com

    *Counsel for Proposed Defendant-Intervenors*

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE