Brian M. Boynton (SBN 222193)
  brian.boynton@wilmerhale.com
Thomas G. Saunders (*pro hac vice pending*)
  thomas.saunders@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6137

Leah M. Fugere (SBN 354757)
  leah.fugere@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 S. Grand Avenue, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5300

Attorneys for Proposed Defendant-Intervenor
ASSOCIATION OF CALIFORNIA EGG FARMERS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>      v.<br><br>THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his Official Capacity as Governor of California; KAREN ROSS, in her Official Capacity as Secretary of the California Department of Food & Agriculture; ERICA PAN, in her Official Capacity as Director of the California Department of Public Health; and ROB BONTA, in his Official Capacity as Attorney General of California,<br><br>            Defendants. | Case No. 2:25-cv-06230-MCS-AGR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED MOTION TO INTERVENE PROPOSED DEFENDANT-INTERVENOR ASSOCIATION OF CALIFORNIA EGG FARMERS**<br><br>Hearing Date:  September 8, 2025<br>Time:  9:00AM PT<br>Location:  Courtroom 7C, 7th Floor |

# <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................1

ARGUMENT .........................................................................................9

    I.     ACEF IS ENTITLED TO INTERVENE AS A MATTER OF
          RIGHT...........................................................................9

         A.     ACEF's Motion To Intervene Is Timely...................................10

         B.     ACEF Has A Significant Protectable Interest .........................11

         C.     ACEF's Protectable Interest Would Be Impaired By An
              Adverse Decision ......................................................14

         D.     ACEF's Interests May Not Be Adequately Represented..........15

    II.    ACEF IS ALSO ENTITLED TO PERMISSIVE
          INTERVENTION ..............................................................21

CONCLUSION .....................................................................................23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*8th Wonder Pictures, LLC v. Clear Distribution LLC,*
    No. CV 21-726 DSF (JEMx), 2021 WL 2323726 (C.D. Cal.
    Apr. 27, 2021)......................................................................................10, 21

*Agua Caliente Band of Cahuilla Indians v. Riverside County,*
    No. EDCV 14-00007-DMG, 2014 WL 12588284 (C.D. Cal.
    Apr. 21, 2014)......................................................................................22

*American Hotel & Lodging Ass'n v. City of Los Angeles,*
    No. CV 14-09603-AB, 2015 WL 12745805 (C.D. Cal. Mar. 25, 2015) ......13

*Apartment Ass'n of Los Angeles County v. City of Los Angeles,*
    No. CV 20-05193-DDP, 2020 WL 4501792 (C.D. Cal. Aug. 5, 2020)........20

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ........................................................19

*Barke v. Banks,*
    No. 8:20-CV-00358-JLS-ADS, 2020 WL 2315857 (C.D. Cal. May 7,
    2020) ...........................................................................................17

*Berger v. North Carolina State Conference of the NAACP,*
    597 U.S. 179 (2022)...................................................................16

*California Dep't of Toxic Substances Control v. Commercial Realty
    Projects, Inc.,*
    309 F.3d 1113 (9th Cir. 2002) ....................................................10

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) .................................................12, 15

*Californians for Safe & Competitive Dump Truck Transportation v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998) ...............................................12, 17

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ....................................11, 15, 16, 17

ii

*County of Fresno v. Andrus*,
    622 F.2d 436 (9th Cir. 1980) ........................................................................12

*Forest Conservation Council v. United States Forest Service*,
    66 F.3d 1489 (9th Cir. 1995) ......................................................................17

*Freedom from Religion Foundation, Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ......................................................................22

*Funds for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003)....................................................................13

*GHP Management Corp. v. City of Los Angeles*,
    339 F.R.D. 621 (C.D. Cal. 2021).................................................................13

*Kleisser v. United States Forest Service*,
    157 F.3d 964 (3d Cir. 1998) ........................................................................13

*Missouri ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017), *cert. denied sub nom. Missouri ex*
    *rel. Hawley v. Becerra*, 137 S. Ct. 2188 (2017) ........................................7

*Missouri v. California*,
    139 S. Ct. 859 (2019)....................................................................................8

*Missouri v. Harris*,
    58 F. Supp. 3d 1059 (E.D. Cal. 2014) .........................................................7

*Missouri v. Harris*,
    No. 2:14-CV-00341-KJM-KJ, 2014 WL 2506606 (E.D. Cal.
    June 3, 2014)...............................................................................10, 14, 15, 19

*N. American Meat Institute v. Becerra*,
    420 F. Supp. 3d 1014 (C.D. Cal. 2019), *aff'd*, 825 F. App'x 518
    (9th Cir. 2020) ............................................................................................11

*N. American Meat Institute v. Becerra*,
    825 F. App'x 518 (9th Cir. 2020), *cert. denied sub nom. N. American*
    *Meat Institute v. Bonta,* 141 S. Ct. 2854 (2021).............................................8

*National Pork Producers Council v. Ross,*
    456 F. Supp. 3d 1201 (S.D. Cal. 2020), *aff'd*, 6 F.4th 1021 (9th
    Cir. 2021), *aff'd*, 598 U.S. 356 (2023) ........................................................8

    

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)............................................................................8

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
  960 F.3d 603 (9th Cir. 2020) ...........................................................9

*Perry v. Schwarzenegger*,
  630 F.3d 898 (9th Cir. 2011) (per curiam) ....................................21

*San Jose Mercury News, Inc. v. United States Dist. Ct.—N. Dist. (San Jose)*,
  187 F.3d 1096 (9th Cir. 1999) ........................................................22

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..........................................................18

*Southwest Center for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ...................................................14, 19

*Spangler v. Pasadena Board of Education*,
  552 F.2d 1326 (9th Cir. 1977) ........................................................21

*SST Sterling Swiss Trust 1987 AG v. New Line Cinema Corp.*,
  No. CV 05-2835-DSF, 2006 WL 8432057 (C.D. Cal. Jan. 23, 2006) .........22

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972)..........................................................15, 16, 17

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ..........................................................10

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ..........................................................21

*United States v. Confederated Tribes & Bands of Warm Springs Reservation of Oregon*,
  745 F.2d 550 (9th Cir. 1984) ..........................................................22

*Utah Ass'n of Counties v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) .................................................13, 18

*Utahns for Better Transportation v. United States Dep't of Transportation*,
  295 F.3d 1111 (10th Cir. 2002) ......................................................13

iv

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Commission*,
  834 F.3d 562 (5th Cir. 2016) ..................................................................13, 18

*Western Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) .........................................................................9

*Wilderness Society v. United States Forest Service*,
  630 F.3d 1173 (9th Cir. 2011) (en banc) ......................................9, 11, 12, 17

**DOCKETED CASES**

*Missouri v. California*, No. 22O148 (U.S.) ...........................................................8

*N. American Meat Institute v. Becerra*, No. 2:19-cv-08569 (C.D. Cal.)..................8

**STATUTES, RULES, AND REGULATIONS**

Cal. Code Regs.
  tit. 3, § 1320.1(a)(1) ....................................................................................5
  tit. 3, § 1320.1(a)(2) ....................................................................................5
  tit. 3, § 1320.4 ............................................................................................2
  tit. 3, § 1320.4(a)(1) ....................................................................................5
  tit. 3, § 1320.4(a)(2) ....................................................................................5
  tit. 3, § 1320.4(a)(3) ....................................................................................5
  tit. 3, § 1350 ...............................................................................................6

Cal. Health & Safety Code
  § 25990 ..................................................................................................1, 3
  §§ 25990-25993.1 ........................................................................................1
  § 25991 .......................................................................................................5
  § 25991(e)(5) ..............................................................................................4
  § 25993 .......................................................................................................4
  §§ 25995-25996.3 ........................................................................................1
  § 25995(a) ...................................................................................................2
  § 25995(e) ...................................................................................................2
  § 25996 ....................................................................................................2, 3

Fed. R. Civ. P. 24 ...........................................................................1, 9, 11, 21, 22

**OTHER AUTHORITIES**

6 *Moore's Federal Practice* § 24.03 (Matthew Bender 3d ed. 2014) .........10, 17, 20

v

6 *Moore's Federal Practice* § 24.10 (Matthew Bender 3d ed. 2014) ..............21, 23

7C Wright et al., *Federal Practice & Procedure: Civil 3d* § 1908.1 .....................12

Adriana Valcu-Lisman & Grace Grossen, *Growing share of egg-laying hens
    are cage-free*, U.S. Dep't of Agric. (Oct. 11, 2023),
    https://www.ers.usda.gov/data-products/charts-of-note/chart-
    detail?chartId=107564 .....................................................................................4

California Dep't of Food & Agric., *California Agricultural Statistics Review
    2022-2023*, https://www.cdfa.ca.gov/Statistics/PDFs/2022-
    2023_california_agricultural_statistics_review.pdf .......................................6

California Dep't of Food & Agric., *Initial Statement of Reasons* (May 28, 2021),
    https://web.archive.org/web/20230721121507/https://www.cdfa.ca.gov/AH
    FSS/pdfs/Animal_Confinement_ISOR_05282021.pdf;.................................5

California Sec'y of State, *Official Voter Information Guide:
    California General Election, Tuesday, November 4, 2008* (Aug.
    11, 2008), http://vig.cdn.sos.ca.gov/2008/general/pdf-guide/vig-
    nov-2008-principal.pdf ...................................................................................3

California Sec'y of State, *Text of Proposed Laws: California General Election,
    Tuesday November 6, 2018*,
    https://vig.cdn.sos.ca.gov/2018/general/pdf/topl.pdf#prop12 ........................3

Olena Sambucci et al., *Avian Influenza and the Economics of California Eggs
    and Milk: Some Early Assessments*, 28 Agric. & Res. Econ. No. 3, 2025,
    https://s.giannini.ucop.edu/uploads/pub/2025/02/27/v28n3_1.pdf ................6

United Egg Producers, *Animal Husbandry Guidelines for U.S. Egg-
    Laying Flocks* (2017 ed.), https://uepcertified.com/wp-
    content/uploads/2019/09/CF-UEP-Guidelines_17-3.pdf ..............................4

U.S. Dep't of Agric., *Egg Markets Overview* (July 25, 2025),
    https://www.ams.usda.gov/mnreports/ams_3725.pdf ...................................4

vi

The Association of California Egg Farmers ("ACEF") submits this memorandum in support of its unopposed motion to intervene as a Defendant-Intervenor under Federal Rule of Civil Procedure 24.[1] ACEF's members are California egg farmers who have a direct and substantial interest in ensuring that the California food safety and animal welfare provisions challenged in this action are upheld. The challenged provisions help to ensure that eggs sold in California are produced from hens that are not confined in overly restrictive cages and to reduce the likelihood that contaminated eggs will be sold in California. It is vitally important to ACEF's members that these protections continue in effect and that consumers remain confident that the eggs they purchase in California are produced more humanely and are free of Salmonella and other pathogens. For the reasons explained below, ACEF should be permitted to intervene in this action.

## BACKGROUND

Relevant Statutory and Regulatory Provisions

Two provisions of California law mandate that eggs sold in California be produced from hens whose enclosures meet certain minimum space requirements: (1) AB 1437, codified as amended at Cal. Health & Safety Code §§ 25995-25996.3; and (2) Proposition 12, codified at Cal. Health & Safety Code §§ 25990-25993.1.

---

[1] Counsel for ACEF conferred with counsel for the parties to this action regarding its motion to intervene. The United States takes no position on the motion. Defendants do not oppose the motion. *See* Declaration of Thomas G. Saunders, dated July 31, 2025.

1

Additionally, a California Department of Food and Agriculture regulation imposes requirements for shipping documents for eggs sold in California. *See* Cal. Code Regs. tit. 3, § 1320.4 (entitled "Shell Egg and Liquid Egg Shipping Document Requirements"). In this lawsuit, the United States contends that some of these provisions are preempted by federal law. *See* Complaint for Declaratory and Injunctive Relief (July 9, 2025), Dkt. 1.

AB 1437 was signed into law by Governor Schwarzenegger on July 6, 2010, and it requires that all eggs sold in California come from hens that are granted a minimum amount of enclosure space. Cal. Health & Safety Code § 25996. Its legislative findings explain that "food animals that are treated well and provided with at least minimum accommodation of their natural behaviors and physical needs are healthier and safer for human consumption." Cal. Health & Safety Code § 25995(a). The Legislature noted its intent to "protect California consumers from the deleterious[] health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress and may result in increased exposure to disease pathogens including salmonella." *Id.* § 25995(e).

AB 1437 provides:

Commencing January 1, 2015, a shelled egg shall not be sold or contracted for sale for human consumption in California if the seller knows or should have known that the egg is the product of an egg-

laying hen that was confined on a farm or place that is not in compliance

with animal care standards set forth Chapter 13.8 (commencing with

Section 25990).

Cal. Health & Safety Code § 25996.

The animal care standards referenced in AB 1437 were added by Proposition 2, an animal-welfare initiative adopted by the California voters in 2008.[2]  They were later amended by Proposition 12, which was adopted by the California voters in 2018.[3]  Proposition 12's stated purpose is to "phas[e] out extreme methods of farm animal confinement" that "threaten the health and safety of California consumers[] and increase the risk of foodborne illness."[4]

The cross-referenced animal care standards provide that "[a] farm owner or operator within the state shall not knowingly cause any covered animal [including egg-laying hens] to be confined in a cruel manner."  Cal. Health & Safety Code § 25990.  As amended by Proposition 12, the standards define "[c]onfined in a cruel manner," as of January 1, 2022, to include "confining an egg-laying hen with less than the amount of usable floorspace per hen required by the 2017 edition of the

[2] *See* California Sec'y of State, *Official Voter Information Guide:  California General Election, Tuesday, November 4, 2008* at 82 (Aug. 11, 2008) (text of Proposition 2), http://vig.cdn.sos.ca.gov/2008/general/pdf-guide/vig-nov-2008-principal.pdf.

[3] California Sec'y of State, *Text of Proposed Laws: California General Election, Tuesday November 6, 2018* at 87, https://vig.cdn.sos.ca.gov/2018/general/pdf/topl.pdf#prop12.

[4] *Id.* § 2.

3

United Egg Producers' Animal Husbandry Guidelines for U.S. Egg-Laying Flocks." *Id.* § 25991(e)(5). Those Guidelines require cage-free systems that, "[d]epending on the system type," provide "a minimum range between 1.0 - 1.5 sq. ft. of usable floor space per hen" in order "to allow for normal behavior."[5]

Since Proposition 12 was adopted in 2018, cage-free hens have come to "comprise a growing percentage of the U.S. egg-laying flock" as other States have also regulated hen confinement and as "multiple retailers and food service providers have pledged to only source eggs from cage-free operations."[6] One recent study estimates that cage-free hens now make up 46.5% of the current U.S. flock.[7]

Proposition 12 directs the California Department of Food and Agriculture and the State Department of Public Health to issue implementing regulations. Cal. Health & Safety Code § 25993. Section 1320.4 of title 3 of the California Code of Regulations is one such regulation. It sets out requirements for the documents of title and shipping manifests that accompany shipments of shell eggs or liquid eggs entering California or made within the state in order to "facilitate product traceability" and "assist distributors and buyers in efforts to ensure products offered

---

[5] United Egg Producers, *Animal Husbandry Guidelines for U.S. Egg-Laying Flocks* at 20 (2017 ed.), https://uepcertified.com/wp-content/uploads/2019/09/CF-UEP-Guidelines_17-3.pdf.

[6] Adriana Valcu-Lisman & Grace Grossen, *Growing share of egg-laying hens are cage-free*, U.S. Dep't of Agric. (Oct. 11, 2023), https://www.ers.usda.gov/data-products/charts-of-note/chart-detail?chartId=107564.

[7] U.S. Dep't of Agric., *Egg Markets Overview* (July 25, 2025), https://www.ams.usda.gov/mnreports/ams_3725.pdf.

4

in California come from … compliant enclosures."[8]  *Id.* § 1320.4(a)(1).  If the eggs were produced in compliance with Cal. Health and Safety Code § 25991, the shipping documents must be printed or stamped "Egg CA Prop 12 Compliant."  *Id.* If the eggs were not produced in compliance with that provision and are being shipped for purposes other than in-state commercial sale, they must be marked, depending on that alternate purpose, "For Export," "For Transshipment," "Not Prop 12 Compliant," or "Only for use at [an official plant in California for making food products not covered by § 25991]."  *Id* § 1320.4(a)(2)-(3).

Section 1320.4(c) further provides:

No person shall label, identify, mark, advertise, or otherwise represent shell eggs or liquid eggs for purposes of commercial sale in the state using the term "cage free" or other similar descriptive term unless the shell eggs or liquid eggs were produced in compliance with section 1320.1 of this Article.[9]

The regulations do not impose grading standards or affirmative labeling

---

[8] California Dep't of Food & Agric., *Initial Statement of Reasons* 27 (May 28, 2021), https://web.archive.org/web/20230721121507/https://www.cdfa.ca.gov/AHFSS/pdfs/Animal_Confinement_ISOR_05282021.pdf; *see id.* at 28 ("Without the proposed statements, buyers, inspectors, enforcement officers, certifying agents, and/or the Department have no practical way to determine if product is compliant without reviewing certification and/or registration status for each distributor[.]").

[9] Section 1320.1 of title 3 of the California Code of Regulations, the cross-referenced regulation, lists necessary features of Proposition 12 compliant hen enclosures.  *Id.* § 1320.1(a)(1)-(2).

5

requirements for egg cartons.

In addition to adopting the provisions challenged in this lawsuit, California imposes stringent Salmonella testing requirements on egg handlers and producers who sell eggs in the state.[10]

<u>ACEF's Participation in Prior Challenges</u>

Proposed Intervenor ACEF is a California nonprofit trade organization founded in 2009 comprised of family-owned and operated egg farms. California egg farmers produced about 4 billion eggs in 2022 and accounted for roughly one-third of the eggs consumed by Californians in that year.[11] The subsequent outbreak of avian influenza has caused egg production to "decline[] precipitously" and has dealt "major impacts" to California's egg market.[12] ACEF's members constitute a significant portion of the California egg industry. It is estimated that they are responsible for more than 50% of the commercial egg-laying hens in California. Declaration of Debra Murdock ¶ 3, dated July 31, 2025 ("Murdock Decl."). ACEF's members are thus directly affected by events or circumstances that reduce demand for eggs in California. A number of ACEF's members also produce eggs outside of

---

[10] *See* Cal. Code Regs. tit. 3, § 1350.

[11] California Dep't of Food & Agric., *California Agricultural Statistics Review 2022-2023* at 93, https://www.cdfa.ca.gov/Statistics/PDFs/2022-2023_california_agricultural_statistics_review.pdf; Olena Sambucci et al., *Avian Influenza and the Economics of California Eggs and Milk: Some Early Assessments*, 28 Agric. & Res. Econ. No. 3, 2025, at 2, https://s.giannini.ucop.edu/uploads/pub/2025/02/27/v28n3_1.pdf.

[12] Sambucci, *supra* note 11, at 2, 4.

California and import eggs into the State. *Id.* ¶ 5. ACEF's members are therefore subject to regulation under AB 1437, Proposition 12, and Section 1320.4. ACEF's principal purposes are to engage in advocacy regarding policies affecting the egg farming industry and to ensure the continued production of fresh and affordable eggs that meet the food safety and animal care standards that consumers expect. *Id.* ¶ 2.

ACEF has sought to establish clear standards that will govern the amount of enclosure space required for egg-laying hens and to promote food safety. Among other things, ACEF worked for many years to clarify the requirements of Proposition 2, the California voter initiative enacted in 2008 that adopted the standard subsequently referenced in AB 1437. Proposition 2 was subsequently amended by Proposition 12.

ACEF has defended AB 1437 and Proposition 12 against repeated legal challenges filed over the last decade that have been uniformly rejected. ACEF was a defendant-intervenor in a 2014 challenge to AB 1437 brought by a coalition of States.[13] That challenge raised a Dormant Commerce Clause argument (later rejected by the Supreme Court) and, in the alternative, the preemption argument now pressed by the United States.[14] After that lawsuit was dismissed for lack of standing,

---

[13] *See Missouri v. Harris*, 58 F. Supp. 3d 1059 (E.D. Cal. 2014) (dismissing for lack of standing); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) (affirming dismissal), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra*, 137 S. Ct. 2188 (2017).

[14] *Id.*

the States in 2017 sought leave to file an a original action in the United States Supreme Court that would have raised the same Dormant Commerce Clause and preemption claims.[15]  ACEF opposed the request and supplied data rebutting the States' predictions of increased nationwide egg prices.[16]  That challenge ended when the Supreme Court denied the motion for leave to file a bill of complaint.  In 2019, ACEF participated as an amicus curiae in yet another Dormant Commerce Clause challenge to Proposition 12 filed in this Court.[17]  The district court denied plaintiff's motion for a preliminary injunction, and that denial was upheld by the Ninth Circuit, where ACEF again participated as an amicus curiae.[18]  Finally, ACEF participated as an amicus curiae in still another Dormant Commerce Clause challenge to Proposition 12.  ACEF supported California in the National Pork Producers Council's unsuccessful challenge at the Supreme Court.[19]  It also participated as an amicus curiae in earlier proceedings in that case in the Ninth Circuit and in the district court.[20]

---

[15] *See Missouri v. California*, 139 S. Ct. 859 (2019) (Mem.) (declining review).

[16] Brief for Association of California Egg Farmers as Amicus Curiae in Support of Defendant, *Missouri v. California*, 139 S. Ct. 859 (2019) (No. 22O148).

[17] *N. Am. Meat Inst. v. Becerra*, No. 2:19-cv-08569 (C.D. Cal. Oct. 4, 2019).

[18] *N. Am. Meat Inst. v. Becerra*, 825 F. App'x 518, 519 (9th Cir. 2020), *cert. denied sub nom. N. Am. Meat Inst. v. Bonta,* 141 S. Ct. 2854 (2021).

[19] *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023) (rejecting Dormant Commerce Clause challenge).

[20] *See Nat'l Pork Producers Council v. Ross,* 456 F. Supp. 3d 1201 (S.D. Cal. 2020), *aff'd*, 6 F.4th 1021 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023).

ACEF supports AB 1437, Proposition 12, and Section 1320.4 as important measures that reduce food safety risks and enhance animal welfare.

## ARGUMENT

Federal Rule of Civil Procedure 24 provides for intervention as of right when a proposed intervenor files a timely motion demonstrating that it has a significant, protectable interest in the subject matter of the lawsuit that will be impaired by an adverse judgment and that the existing parties may not adequately represent its position. The Rule allows permissive intervention when a proposed intervenor files a timely motion and asserts a claim or defense in the case that shares common questions of law or fact with the claims or defenses of the parties to the action. ACEF should be permitted to intervene both as of right and permissively.

## I.    ACEF IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Rule 24(a)(2) provides for intervention by a nonparty as a matter of right if it "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'" *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)). These requirements are interpreted "broadly in favor of intervention." *Id.*; *see also Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th

9

Cir. 2011) (en banc) ("[The Ninth Circuit's] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." (citation omitted)); 6 *Moore's Federal Practice* § 24.03[1][a], at 24-22 (Matthew Bender 3d ed. 2014) ("Rule 24 is to be construed liberally … and doubts resolved in favor of the proposed intervenor.").  As the Eastern District of California concluded when ACEF sought to intervene to defend a similar challenge to AB 1437, all four requirements are satisfied in this case.  *See Missouri v. Harris*, No. 2:14-CV-00341-KJM-KJ, 2014 WL 2506606, at *8-10 (E.D. Cal. June 3, 2014).

## A. ACEF's Motion To Intervene Is Timely

ACEF's motion to intervene is timely.  "Timeliness is a flexible concept; its determination is left to the district court's discretion."  *8th Wonder Pictures, LLC v. Clear Distrib. LLC*, No. CV 21-726 DSF (JEMx), 2021 WL 2323726, at *2 (C.D. Cal. Apr. 27, 2021) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).  The court considers three factors: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Id.* at *2 (quoting *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)).

Here, ACEF filed its motion at the very beginning of proceedings, approximately three weeks after the United States filed its complaint (on July 9,

10

2025).  *See N. Am. Meat Inst. v. Becerra,* 420 F. Supp. 3d 1014, 1021 (C.D. Cal. 2019) (motion to intervene was timely when filed "25 days after the action commenced"), *aff'd*, 825 F. App'x 518 (9th Cir. 2020).  The United States did not serve its complaint for several weeks, and California has not yet responded to the complaint.  Permitting ACEF to intervene at this very early stage would not prejudice the other parties to this case in any respect.  As required by Rule 24(c), ACEF has attached a proposed answer to the complaint to its motion to intervene.  ACEF expects promptly to file a motion for judgment on the pleadings under Rule 12(c) raising threshold legal challenges to the United States's complaint on the same schedule as any Rule 12 motion by California.  That motion and any Rule 12 motion filed by California can be consolidated and considered in a coordinated fashion.  ACEF's intervention thus would not cause delay or "disruption … in the proceedings."  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

## B.    ACEF Has A Significant Protectable Interest

ACEF has a significant, protectable interest in defending AB 1437, Proposition 12, and Section 1320.4 from challenge.  The "protectable interest" requirement is a "practical, threshold inquiry" and "no specific legal or equitable interest need be established."  *Citizens for Balanced Use*, 647 F.3d at 897 (alterations and internal quotation marks omitted); *see also Wilderness Soc'y,* 630 F.3d at 1179

11

(requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process" (internal quotation marks omitted)). "[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interest as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

It is well established that parties who have structured their affairs in light of a law or regulation have an interest in intervening to defend the law or regulation from legal challenge. "[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." 7C Wright et al., *Federal Practice & Procedure: Civil 3d* § 1908.1 & n.45, at 336 (collecting cases). For example, in *Lockyer*, the court held that healthcare providers who opposed providing certain services had a sufficient interest to intervene in a suit seeking to invalidate a federal law that provided them with protections. 450 F.3d at 441; *see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (union had "significant interest" in California prevailing wage law that plaintiff claimed was preempted); *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (a group

12

of small farmers had an "interest" in administrative proceeding related to reclamation laws that "provide[d] small farmers … with small tracts of land at nonspeculative prices"); *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 623 (C.D. Cal. 2021) (tenant advocacy organizations had interest in "ongoing applicability" of eviction moratorium "which directly impact[s] many of their tenant members"); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. CV 14-09603-AB (SSx), 2015 WL 12745805, at *3 (C.D. Cal. Mar. 25, 2015) (union had "a significantly protectable interest" in wage ordinance "in that its members are beneficiaries" of the ordinance).[21]

In this case, ACEF's members rely on the food safety and animal welfare protections afforded by AB 1437, Proposition 12, and Section 1320.4. As explained

---

[21] *Cf. Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016) (trade association had protectable interest in defending "regulatory system governing" its members against a lawsuit that was "premised on the assumption that the [a]ssociation's members are the beneficiaries of this regulatory system"); *Funds for Animals, Inc. v. Norton*, 322 F.3d 728, 730-731, 735 (D.C. Cir. 2003) (Mongolian government agency that benefited from classification of argali sheep as "threatened" rather than "endangered" had protectable interest in litigation challenging the "threatened" determination); *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1112-1113, 1115-1116 (10th Cir. 2002) (trade association whose members benefited from a challenged government action and whose "interests w[ould] be substantially impaired" by the invalidation of the action had a protectable interest); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1248, 1252 (10th Cir. 2001) (finding group of proposed intervenors, including environmental advocacy organizations and three private businesses, had "interest" in suit to invalidate Presidential Proclamation establishing a monument in part due to businesses' "economic stake in [the monument's] continued existence")*; Kleisser v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (school district and municipalities that would receive funds from receipts of approved logging projects and companies that had or would likely have contracts to cut timber had interest in litigation challenging approval of logging projects).

above, ACEF's members constitute a significant portion of the California egg industry. *See supra* at p. 7. Any disruption to the market that decreases consumption of eggs has a direct and significant impact on ACEF's members. Murdock Decl. ¶ 4. The hen enclosure requirements of AB 1437 and Proposition 12, as well as the shipping record requirements of Section 1320.4, are designed to help mitigate the health risks associated with eggs. *See supra* pp. 1-6. The provisions also help to assure Californian consumers that the eggs they are purchasing were produced humanely, which most consumers prefer. Murdock Decl. ¶ 4. As another district court in this Circuit explained in granting ACEF's motion to intervene in the earlier challenge to AB 1437, ACEF thus "has a significantly protectable economic interest in the outcome of the litigation" because "[i]ts members directly benefit from the protections of AB 1437 and [a related regulation] by way of a stable consumer egg demand in California." *Missouri*, 2014 WL 2506606, at *8.

## C.    ACEF's Protectable Interest Would Be Impaired By An Adverse Decision

ACEF's protectable interest would be impaired by a ruling striking down AB 1437, Proposition 12, and Section 1320.4. Under this prong, "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (alteration in original); *accord*

14

*Citizens for Balanced Use*, 647 F.3d at 898.  This requirement is not difficult to satisfy:  Once it is "found that [a proposed intervenor] ha[s] a significant protectable interest, [the Ninth Circuit] ha[s] little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it."  *Lockyer*, 450 F.3d at 442; *accord Citizens for Balanced Use*, 647 F.3d at 898.  ACEF's interest in ensuring that contaminated eggs are not sold in California would be undermined by an adverse judgment because AB 1437, Proposition 12, and Section 1320.4 are designed to help protect against the spread of *Salmonella* and other pathogens.  Just as it did in *Missouri v. Harris*, "ACEF meets the third requirement for intervention as of right." 2014 WL 2506606, at *9.

### D.    ACEF's Interests May Not Be Adequately Represented

ACEF's interests in this litigation may not be adequately represented by the State of California.  This prong of the test is met "if the applicant shows that representation of his interest '*may* be' inadequate; … the burden of making that showing should be treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *Citizens for Balanced Use*, 647 F.3d at 900 ("We stress that intervention of right does not require an absolute certainty … that existing parties will not adequately represent its interests.").  The Ninth Circuit considers three factors in making this determination: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed

15

intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898.

The Supreme Court recently reiterated that Rule 24(a) permits intervention by private parties who seek to "assert[] a related interest to that of an existing government party." *Berger v. N.C. State Conf. of the NAACP,* 597 U.S. 179, 195 (2022). Reviewing its earlier decision in *Trbovich*, in which it permitted a union member who had filed an administrative complaint with the Department of Labor to intervene in the enforcement suit he had triggered, the Supreme Court cautioned that a government party may not adequately represent a non-party even if, "[a]t a high level of abstraction" the non-party's interest and the government party's interest might "seem[] closely aligned." *Id.* at 196 (citing 404 U.S. at 538). Indeed, after studying the particularities of the proffered interests, the *Trbovich* Court recognized that "the union member sought relief against his union, full stop; meanwhile, the Secretary also had to bear in mind broader public-policy implications." *Id.* In such circumstances when the government party's and non-party's interests are "related" but not "identical," the *Trbovich* Court recognized and the *Berger* Court underscored, no presumption of adequate representation applies and the non-party movant bears only a "minimal" burden to establish inadequacy. *Id.* (quoting

16

*Trbovich*, 404 U.S. at 538 n.10).

In line with this guidance, courts "frequently" conclude that the government is an inadequate representative "when one group of citizens sues the government, challenging the validity of laws or regulations, and the citizens who benefit from those laws or regulations wish to intervene and assert their own, particular interests rather than the general, public good." 6 *Moore's Federal Practice* § 24.03[4][a][iv][B], at 24-58.1. For example, in *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489 (9th Cir. 1995), the Ninth Circuit explained that "[t]he Forest Service is required to represent a broader view than the more narrow, parochial interests of [proposed-intervenors] the State of Arizona and Apache County." *Id.* at 1499, *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1177, 1180; *see also Mendonca*, 152 F.3d at 1190 (union "demonstrated that the representation of its interests by the named" state agencies and agents "may have been inadequate" because "the employment interests of [its] members were potentially more narrow and parochial than the interests of the public at large"); *Citizens for Balanced Use*, 647 F.3d at 899 (observing that "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation" (internal quotation marks omitted)); *Barke v. Banks*, No. 8:20-CV-00358-JLS-ADS, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) ("[I]t is no novel

17

legal conclusion to determine that a neutral governmental body's interests sufficiently diverge from those of an organization representing a specific sub-set of the public to satisfy the inadequate representation prong.").

Other circuits proceed similarly. In *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Com'n*, 834 F.3d 562, 569 (5th Cir. 2016), the Fifth Circuit permitted a trade association to intervene to defend a regulatory scheme administered by a state agency because the association's "interests—protecting its members' businesses—are narrower than the Commission's broad public mission." Similarly, in *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), the Fifth Circuit held that two trade associations made up of timber purchasers were not adequately represented by the government in a suit brought by an environmental organization to bar certain timber sales. *Id.* at 1203, 1207-1208. The court explained that "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry." *Id.* at 1208. The Tenth Circuit reasoned likewise in *Utah Association of Counties v. Clinton.* 255 F.3d 1246 (10th Cir. 2001). There the court concluded that a group of entities, including several environmental associations, two hotels, and a private company, seeking to intervene in a lawsuit brought to invalidate a Presidential Proclamation establishing a national monument might not be adequately represented by the federal government. *Id.* at 1248, 1256. The *Utah Association* court observed that "[i]n litigating on behalf of the general public, the government

18

is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor" and approvingly cited "cases from other circuits holding that an intervenor's interest would not be adequately represented by a government entity that must represent the broader public interest." *Id.* at 1255-1256.

   As in the cases discussed above, ACEF's interests diverge from the government's. California represents all stakeholders, and the state has a tradition of anti-animal cruelty legislation. *E.g.*, *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 942 (9th Cir. 2013) (describing California's ban on the sale of *foie gras*). But it must also take into account its relationship with the United States and the views of in-state business groups that might oppose the challenged provisions. As a result, "[w]hile California and ACEF both share a common interest in defending AB 1437," as well as Proposition 12 and Section 1320.4, "California may not focus on ACEF's economic interests in contrast to the broad public interest in ensuring egg products are safe for consumption in California." *Missouri*, 2014 WL 2506606, at *9.

   In addition, ACEF adds a necessary element to the proceedings that would otherwise be missing: the perspective of private businesses that are well-versed in the need for food safety and that support the positive health effects of AB 1437, Proposition 12, and Section 1320.4. *See Sw. Ctr. for Biological Diversity*, 268 F.3d

19

at 823 (construction company and trade associations may intervene in suit filed against federal agencies and the City of San Diego because they "would likely offer important elements to the proceedings that the existing parties would likely neglect" and because they would "express their own unique private perspectives"); *Apartment Ass'n of Los Angeles Cnty. v. City of Los Angeles,* No. CV 20-05193-DDP (JEMx), 2020 WL 4501792, at *3 (C.D. Cal. Aug. 5, 2020) (renter advocacy group's interest in eviction moratorium may not be adequately protected by government party because the government party may not have "access to the information that would underpin" the group's arguments); 6 *Moore's Federal Practice* § 24.03[5][a], at 24-60, 24-61 (although "the mere fact that a movant has special expertise in a relevant area does not necessarily support mandatory intervention," "courts look favorably on intervention petitions offering a unique perspective"). As an organization whose members are responsible for 50% of the egg-laying hens in California, have followed stringent food quality standards for nearly two decades, and produce eggs both in California and in other States, ACEF brings unique expertise to this litigation. Murdock Decl. ¶ 3. ACEF's participation may thus prove helpful to this Court as it considers the threshold questions of law that require dismissal in this case or if it evaluates the United States's assertions about the causes of egg-price trends, the effectiveness of certain production practices, and the impact of the challenged provisions on the egg market. *See* Compl. ¶¶ 1-4.

20

## II.    ACEF IS ALSO ENTITLED TO PERMISSIVE INTERVENTION

ACEF is also entitled to intervene permissively under Federal Rule of Civil Procedure 24(b)(1)(B).  "'[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'"  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).  Once these requirements are met, the court may exercise its sound discretion to permit intervention, considering "whether intervention will unduly delay or prejudice the original parties[,] … whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *8th Wonder Pictures*, 2021 WL 2323726, at *2; *see also Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (per curiam) (listing other factors district court may consider, including "'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented'" (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); 6 *Moore's Federal Practice* § 24.10[1], at 24-63 ("[T]he decision regarding whether to grant permissive intervention is always subject to the inherently discretionary considerations of equity and judicial economy.").

All three requirements for permissive intervention are satisfied in this case. First, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). The United States filed suit invoking federal jurisdiction, and ACEF does not assert any new claims. In any event, ACEF has a clear and direct interest in the litigation and thus could easily establish standing. Second, the factors considered to determine whether Rule 24(b)'s timeliness requirement is met are the same as for Rule 24(a). *See San Jose Mercury News, Inc. v. United States Dist. Ct.— N. Dist. (San Jose)*, 187 F.3d 1096, 1101 (9th Cir. 1999). Although some courts treat the timeliness requirement less "leniently" in the context of permissive intervention, *SST Sterling Swiss Trust 1987 AG v. New Line Cinema Corp*., No. CV 05-2835-DSF (VBKx), 2006 WL 8432057, at *2 (C.D. Cal. Jan. 23, 2006) (quoting *United States v. Confederated Tribes & Bands of Warm Springs Rsrv. of Or.*, 745 F.2d 550, 552 (9th Cir. 1984)), ACEF's motion, filed just weeks after the United States's complaint, easily meets the timeliness requirement even under a stricter standard of review. Third, ACEF's and California's positions have a "common question of law": whether AB 1437, Proposition 12, and Section 1320.4 are preempted by federal law. *See Agua Caliente Band of Cahuilla Indians v. Riverside Cnty.*, No. EDCV 14-00007-DMG (DTBx), 2014 WL 12588284, at *4 (C.D. Cal.

22

Apr. 21, 2014) (public agency may intervene under Fed. R. Civ. P. 24(b) in suit alleging federal preemption of municipal ordinance because the entity's "defense and the main action share common questions of law and fact").

Because all three requirements are met, this Court should exercise its discretion to grant ACEF leave to intervene.  As discussed above, ACEF's intervention will not delay proceedings and will not prejudice the United States, which will be afforded ample opportunity to address any arguments raised by ACEF in defense of AB 1437, Proposition 12, and Section 1320.4.  More broadly, permitting ACEF's intervention allows it to offer its distinctive perspective on the litigation and will serve the ends of justice.  Granting intervention permits ACEF to bring its specialized knowledge about food safety and the economics of egg farming to this litigation.  *See* 6 *Moore's Federal Practice* § 24.10[2][b], at 24-67 ("Courts are particularly willing to grant permissive intervention in complex litigation when the movant may be able to provide unique input that may be of value to the court … 'especially on subjects within the special expertise of the intervenor.'").  Moreover, as discussed above, ACEF has several important interests at stake this litigation that California may not adequately represent.

## CONCLUSION

For the reasons given above, this Court should grant ACEF's unopposed motion to intervene.

23

1

DATED:  August 1, 2025

Respectfully submitted,

2

3

**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**

4

5

/s/ *Brian M. Boynton*

Brian M. Boynton (SBN 222193)

6

 brian.boynton@wilmerhale.com

Thomas G. Saunders (*pro hac vice pending*)

7

 thomas.saunders@wilmerhale.com

WILMER CUTLER PICKERING

8

 HALE AND DORR LLP

9

2100 Pennsylvania Avenue, NW

Washington, DC 20037

10

Telephone: (202) 663-6137

11

12

Leah M. Fugere (SBN 354757)

 leah.fugere@wilmerhale.com

13

WILMER CUTLER PICKERING

 HALE AND DORR LLP

14

350 S. Grand Avenue, 24th Floor

15

Los Angeles, CA 90071

Telephone: (213) 443-5300

16

17

*Attorneys for Proposed Defendant-*

18

*Intervenor Association of California Egg*

*Farmers*

19

20

21

22

23

24

25

26

27

28

24

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Proposed Defendant-Intervenor Association of California Egg Farmers, certifies that this brief contains 5,705 words, which complies with the word limit of L.R. 11-6.1.

DATED:  August 1, 2025                    Respectfully submitted,

                                          **WILMER CUTLER PICKERING**
                                          **  HALE AND DORR LLP**

                                          /s/ *Brian M. Boynton*
                                          Brian M. Boynton (SBN 222193)
                                            brian.boynton@wilmerhale.com
                                          Thomas G. Saunders (*pro hac vice pending*)
                                            thomas.saunders@wilmerhale.com
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          2100 Pennsylvania Avenue, NW
                                          Washington, DC 20037
                                          Telephone: (202) 663-6137

                                          Leah M. Fugere (SBN 354757)
                                            leah.fugere@wilmerhale.com
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          350 S. Grand Avenue, 24th Floor
                                          Los Angeles, CA 90071
                                          Telephone: (213) 443-5300

                                          *Attorneys for Proposed Defendant-*
                                          *Intervenor Association of California Egg*
                                          *Farmers*