Jessica L. Blome
Cal. Bar No. 314898
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

Scott Edwards
NY Bar No. 3001575
Animal Wellness Action
611 Pennsylvania Ave., S.E. #136
Washington, D.C. 20003
(443) 865-3600
sedwards@animalwellnessaction.org
*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:25-cv-06230-MCS-AGR |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF THE CENTER FOR A HUMANE ECONOMY AND ANIMAL WELLNESS ACTION'S MOTION TO INTERVENE** |
| THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his Official Capacity as Governor of California; KAREN ROSS, in her Official Capacity as Secretary of the California Department of Food & Agriculture; ERICA PAN, in her Official Capacity as Director of the California Department of Public Health; and ROB BONTA, in his Official Capacity as Attorney General of California, | The Honorable Mark C. Scarsi Date & Time of Hearing: October 27, 2025, 9:00 a.m. Location: Courtroom 7C, 7th Fl. |
| Defendants. | |

## Table of Contents

I.    Introduction ......................................................................................5

II.   Background .......................................................................................5

    A.    Relevant Californian legislative history through Proposition 12..........5

    B.    Proposed Intervenors. ...................................................................8

III.  Argument ..........................................................................................9

    A.    Proposed Intervenors are entitled to intervene as of right. ..................9

        1.    Proposed Intervenors' motion is timely. ....................................10

        2.    Proposed Intervenors have significant protectable interests that may be impaired by result of this action. .................................11

        3.    Proposed Intervenors are not adequately represented by Defendants. .................................................................................14

    B.    Proposed Intervenors also meet the standards for permissive intervention. .................................................................................18

IV.   Conclusion .......................................................................................19

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

# Table of Authorities

## Cases

*Americans for Family Farmers, et al. v. CDFA, et al.*,
    Sacramento County Superior Court, Case No. 34-2021-80003774 ................15

*Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470 (9th Cir. 1992) .....................18

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ..........14

*Callahan v. Brookdale Senior Living Cmtys., Inc.,*
    42 F.4th 1013 (9th Cir. 2022)......................................................14, 19

*Citizens for Balanced Use v. Montana Wilderness Assoc'n*,
    647 F.3d 893 (9th Cir. 2011).............................................................12

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998).....................................9

*Flying Food Grp., LLC v. City of L.A.*, No. 2:23-cv-09146-SB-MRW,
    2024 U.S. Dist. LEXIS 70568, at *6 (C.D. Cal. Jan. 29, 2024)......................19

*Freedom from Religion Found, Inc.*, 644 F.3d 836 (9th Cir. 2011)................18, 19

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993)..................................12

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995).....................12

*National Pork Producers Council v. Ross*, 598 U.S. 356 (2023)............................13

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) .....................12

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) ................18

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) .......................12

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ...........................................9, 11

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) .............................................10

Sw. Ctr for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001)................14

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .......................................14

*Triumph Foods LLC v. Campbell*, 742 F. Supp. 3d 63 (D. Mass. 2024), *appeal docketed,* No. 24-1759 (1st Cir. Aug. 19, 2024) ................................................13

*United States ex. rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391 (9th Cir. 1992)................................................10

*United States v. Alisal Water Corp.,* 370 F.3d 915 (9th Cir. 2004) .......................10

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) .........................9

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)...................9

*Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ....11

**Statutes**

Cal. Health & Safety Code, § 25990 ...............................................................6

Cal. Health & Safety Code, § 25995(e)..........................................................6

Cal. Health & Safety Code, § 25996 ...............................................................6

Gov't Code, sec. 11346.3, subd. (b) ..............................................................15

Gov't Code, sec. 11346.3, subd. (b)(1)(D)....................................................15

**Regulations**

Cal. Code Regs. Tit. 3, § 1350 .......................................................................6

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

## I.    Introduction

The Center for a Humane Economy and Animal Wellness Action have been frequent and consistent voices in litigation surrounding Proposition 12 and its sister law Massachusetts' Question 3, including, but not limited to, arguments on federal preemption of state law. As described below, Proposed Intervenors present special and particular interests, expertise, and experience on state regulation of intensive animal confinement and the harms to public health, worker safety, and consumer health that flow from these inhumane commercial practices.

Proposed Intervenors are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24.  Proposed Intervenors' motion for leave to intervene is timely, and Proposed Intervenors have demonstrated through consistent and persistent involvement in similar litigation that they have significantly protectable interests that will not be adequately represented by existing parties and that will be impaired should Proposition 12 fall. In the alternative, Proposed Intervenors meet the standards for permissive intervention under Rule 24 as well.

## II.    Background

### A.    Relevant Californian legislative history through Proposition 12.

California is the fourth largest economy in the world today. It also produces more food in total—though fruit, vegetables, meat, nuts, dairy, and eggs—than any other U.S. state.

Due to growing public concerns about the negative impacts of intensive confinement of farm animals, California voters passed Proposition 2 in 2008 to, in the Legislature's own words, "protect California consumers from the deleterious[] health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress and may result in increased exposure to disease pathogens including salmonella." Cal. Health & Safety Code, § 25995(e). In relevant part,[1] Proposition 2 required that farmers in-state provide egg-laying hens enough room to turn around freely, lie down, stand up, and fully extend limbs. *Id.* at § 25990 (2008). The state's implementing regulations required 0.8 square feet of floor space per egg-laying hen. Cal. Code Regs. Tit. 3, § 1350. Over the next decade, the law was further amended; in 2010, the Legislature required that any shelled eggs sold in California come from animals housed in compliance with the standards in Chapter 13.8 of the California Health and Safety Code (i.e., the codified Proposition 2). *See* Cal. Health & Safety Code, § 25996.

Most recently, California voters overwhelming approved Proposition 12 in 2018. Proposition 12 aimed to create new and stronger minimum requirements for space afforded to egg-laying hens and again prohibited the sale of any eggs

---

[1] Both Proposition 2 and 12 also addressed the confinement of pregnant sows in gestation crates, but for the sake of brevity and simplicity, only the aspects of the laws relevant to eggs and hens will be reviewed here.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

(including liquid eggs this time) in California that come from animals raised in conditions that are not compliant with the measure's upgraded minimum requirements. Cal. Prop. 12 (2018), Sections 3-7 (amending Cal. Health & Safety Code, §§ 25990-25993 and adding § 25993.1).

According to the "Analysis by the Legislative Analyst, Arguments for Proposition 12, and Arguments Against Proposition 12," presented to voters in the 2018 Voter Information Guide, Proposition 12 was intended to achieve three goals. First, Proposition 12 aimed to end the cruel practice of confining egg-laying hens in tiny cages their entire lives.[2] Second, Proposition 12 would eliminate "unsafe "unsafe products from these abused animals from the California marketplace," thereby reducing "the risk of people being sickened by food poisoning and factory farm pollution," such as salmonella.[3] Third, Proposition 12 was meant to help family farmers by creating sensible standards designed to encourage and keep family farmers in business.[4] In other words, Proposition 12 was designed and intended to improve the humaneness of California's economy in multiple ways, much like its earlier relative Proposition 2.

---

[2] 2018 Voter Initiative Guide, p. 70. California Sec'y of State, *Text of Proposed Laws: California General Election, Tuesday November 6, 2018,* at 87, https://vig.cdn.sos.ca.gov/2018/general/pdf/topl.pdf#prop12.

[3] *Id.*

[4] *Id.*

**B.          Proposed Intervenors.**

The Center for a Humane Economy (the Center) is a 501(c)(3) nonprofit headquartered in Maryland and operating nationally. It is the first nonprofit of its kind, focusing specifically on influencing the conduct of corporations to forge a more humane economy. Its efforts include corporate engagement, advocacy campaigns, education, and research and analysis of business practices. In a society where consumers, investors, and stakeholders consistently report a preference for the humane treatment of animals, the Center works to make these desires for social responsibility a reality. As evidenced by the voters' decision to enact Proposition 12, factory farms, by their very nature, infect interstate and international commerce with unnecessary animal cruelty. The Center works to eliminate cruel factory farming practices, like keeping animals in tiny cages, by educating consumers about their choices in the marketplaces, championing forms of animal agriculture do not involve intensive confinement, and making corporations aware that consumers prefer eating animals raised in healthy and humane conditions.

Animal Wellness Action, a 501(c)(4) nonprofit headquartered in Washington, D.C., works to promote animal welfare by advocating for the passage and enforcement of laws that protect animals from cruelty. It champions policies that alleviate the suffering of all animals, including egg-laying hens. Through its staff, extensive network of members and supporters, and collaborating

organizations, Animal Wellness Action battles systemic forms of animal exploitation by advocating for the passage of laws that will protect animals from unnecessary cruelty, encouraging the enforcement of existing animal protection laws, lobbying for the election of candidates who care about animal causes, and building partnerships with groups, agencies, and other stakeholders.

## III.    Argument

### A.    Proposed Intervenors are entitled to intervene as of right.

The Ninth Circuit has adopted a four-part test to determine whether a potential intervenor must be granted intervention under Federal Rule of Civil Procedure 24(a): "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Courts are to be "guided primarily by practical and equitable considerations" when undergoing this analysis. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). And courts are to construe Rule 24(a) "broadly in favor of proposed intervenors."

*Id.* (quoting *United States ex. rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992)).

### 1. Proposed Intervenors' motion is timely.

Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004). In analyzing these factors, courts should bear in mind that "[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (emphasis added).

Proposed Intervenors' motion for leave to intervene is timely, given the procedural posture of the case and the laxity with which Plaintiff United States has proceeded to prosecute its complaint. Plaintiff took weeks to properly serve Defendants with the original complaint. *See* ECF Nos. 12, 34-38. Then, weeks after successful service of the original complaint, Plaintiffs filed an amended complaint just last week on September 12, ECF No. 47, which has not yet been answered. On September 11th, the parties filed a proposed briefing schedule for anticipated motion practice. ECF No. 48. But on September 12, 2025, the Court

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

issued a minute order suspending Defendants' deadline to respond to the amended complaint. ECF No. 49. In this order, the Court stated it intended to discuss the proposed briefing schedule after the September 22 hearing on pending motions to intervene. ECF No. 49.

It is relevant that none of the parties have filed responsive pleadings to challenge the legal sufficiency of Plaintiffs' arguments. *See Sierra Club,* 995 F.2d. at 1481 (intervention was timely because motion was made at the outset of litigation before EPA had filed an answer). Thus, the intervention in this case will occur at an early and acceptable stage of this litigation. As the case is still in its infancy, there is no prejudice to other parties by allowing intervention.

After the Court issued its minute order on September 12, 2025, Proposed Intervenors worked to organize, engage counsel, and fashion a strategy for this significant proceeding. Proposed Intervenors expect to file subsequent motions and briefs on the same schedule as Defendants, which will avoid prejudice and any delay arising out of granting the motion to intervene.

### 2. Proposed Intervenors have significant protectable interests that may be impaired by result of this action.

"[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks and citations omitted). "Whether an

applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)) (internal quotation marks and brackets omitted). Proposed intervenors need only to show that their interest(s) are protectable under law and there is a connection between those interests and the legal action at hand. *Citizens for Balanced Use v. Montana Wilderness Assoc'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Courts have routinely found that public interest or advocacy groups have an interest sufficient to meet Rule 24's requirements when an action threatens the survival of a policy or law that the organization supported or participated in its passage or implementation. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).

Proposed Intervenors include, notably, the only national nonprofit dedicated specifically to the push for more humane commerce and industry—the Center for a Humane Economy. Edwards Decl. ¶ 4. As such, its members and supporters include consumers and producers of animal products who wish and work for animal-reliant industries to create their products using methods and means that reduce animal suffering. *Id.* at ¶ 8. The Center's advocacy and research touch on a

variety of commercial industries, such as tourism, cosmetics, medicine, agriculture, and recreation. *Id.* at ¶ 9.

Further, the founder of the Center for a Humane Economy and Animal Wellness Action, Wayne Pacelle, has specialized knowledge and expertise in this area, as Mr. Pacelle initiated Proposition 12 while in his previous role as President and CEO of the Humane Society of the United States. *Id.* at ¶ 6. Mr. Pacelle was also personally involved in the creation of Question 3. *Id.*

Proposed Intervenors have previously filed *amici curiae* briefs in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), the pork industry's challenge to Proposition 12 that reached the United States Supreme Court. Proposed Intervenors also filed *amici* briefs in both the Massachusetts District Court and the First Circuit in challenges to Massachusetts' Question 3. *See Triumph Foods LLC v. Campbell*, 742 F. Supp. 3d 63 (D. Mass. 2024), *appeal docketed,* No. 24-1759 (1st Cir. Aug. 19, 2024). Proposed Intervenors also participated in the California administrative notice and comment process during rulemaking to implement Proposition 12. (Edwards Decl. ¶ 12). And finally, as discussed below, initiated litigation against California over the state's failures in proper implementation.

### 3. Proposed Intervenors are not adequately represented by Defendants.

In the Ninth Circuit, courts consider three factors when determining whether the interests of a prospective intervenor are already adequately represented: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022).

However, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Sw. Ctr for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *citing Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972) (emphasis added). In determining the "adequacy of representation," courts consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *California v. Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th Cir. 1986) (citation omitted). Each of

these factors weighs in favor of allowing the Proposed Intervenors to join this litigation.

The history of Proposition 12 implementation reveals divergent interests between Proposed Intervenors and the Defendant. In 2021, frustrated by both the slow and inadequate nature of the measure's implementation by the state, Proposed Intervenors sued California in California state court. *Americans for Family Farmers, et al. v. CDFA, et al.* Sacramento County Superior Court, Case No. 34-2021-80003774. California had submitted their draft proposed regulations in May 2021, over two years after the passage of Proposition 12, for public review and comment. As is required by state law, California prepared a standardized regulatory impact analysis (SRIA) of the proposed regulations. Gov't Code, sec. 11346.3, subd. (b). Among other obligations, SRIAs must assess the "benefits of the regulation to the health and welfare of California residents, worker safety, and the state's environment." Gov't Code, sec. 11346.3, subd. (b)(1)(D).

Despite, however, the plain language of the legislative findings contained in the Voter Information Guide, and in direct contravention of Californian voters' intent in and rationale for passing Proposition 12, California stated that the

proposed regulations would not "directly impact human health and welfare of California residents, worker safety, or the State's environment."[5]

Proposed Intervenors had submitted comments on the proposed regulations asking the California Department of Food and Agriculture to follow the law by promulgating joint regulations with the California Department of Public Health that aim to achieve all three aims of the voters in their approval of Proposition 12, instead of just one. Edwards Decl. ¶ 12. Proposed Intervenors urged the state not to neglect the public health and environmental harms caused by the intensive confinement practices voters sought to remedy through their votes in favor of Proposition 12. *Id.*

However, in the revisions to the proposed regulations had been released in December 2021, California failed to remedy its earlier error, despite recognizing that the SRIA's statements conflicted with the legislative purpose of Proposition 12 as approved by the voters. As a result, Proposed Intervenors challenged this failure of implementation in court. Edwards Decl. ¶ 12.

Proposed Intervenors continued to pressure California due to California's continued delays in Proposition 12 implementation in other ways. For example, Proposed Intervenors urged the state in writing in mid-2023 not to delay

---

[5] Initial Final Statement of Reasons, Dept. Food and Agric., Animal Health and Food Safety, https://www.cdfa.ca.gov/AHFSS/pdfs/FSOR_Final_8.30.22.pdf, p. 7.

implementation any longer. *Id.* at ¶ 12. Not only may Proposed Intervenors' interests potentially diverge from Defendants', as described above, but so too may Proposed Intervenors present missing elements not addressed by the Defendants.

For one, Proposed Intervenors represent the connecting link between animal welfare concerns rooted in morality, and those that arise from symbiotic interests of commerce, economics, and public health. At base, Proposed Intervenors' organizational efforts are largely premised off the idea that the humane treatment of animals and the commercial and health interests of humans are inextricably linked and so where one goes, the other follows. *See* Edwards Decl. ¶¶ 3, 4.

Second, Proposed Intervenors' members, supporters, and staff include veterinarians. *See generally* Edwards Decl.; Harvilicz Decl. Of special note, these include veterinarians with special expertise and knowledge of the public health and safety ramifications of intensively confined animals in commercial industries. Edwards Decl. ¶ 9. Indeed, Proposed Intervenors have continuously and repeatedly exerted efforts and resources to educate the public about the public health impacts of animal confinement in commerce and also to lobby for changes to laws to address these negative impacts. *Id.* at ¶¶ 7, 9. This is true not only in the meat sphere, but also in the "sport" (cockfighting and predator hunting) space and in fashion (mink fur farming). *Id.* at ¶¶ 9, 10.

As a result, Proposed Intervenors are particularly well-situated to simultaneously address the intertwined public health, commercial, and humane ethics rationales underlying Proposition 12.

**B.      Proposed Intervenors also meet the standards for permissive intervention.**

In the alternative, Proposed Intervenors readily meet the elements necessary for permissive intervention under Federal Rule of Civil Procedure 24(b)(1). These elements are "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found, Inc.*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). A court must also examine whether the permissive intervention would cause undue delay or be prejudicial. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

On top of these, a court may (but is not required to) consider a variety of other factors in its decision. These factors include "the nature and extent of the intervenors' interest," "their standing to raise relevant legal issues," "the legal position they seek to advance[] and its probable relation to the merits of the case," and "whether intervention will prolong or unduly delay the litigation…" *Flying Food Grp., LLC v. City of L.A.*, No. 2:23-cv-09146-SB-MRW, 2024 U.S.

Dist. LEXIS 70568, at *6 (C.D. Cal. Jan. 29, 2024) (quoting *Callahan,* 42 F.4th at 1022).

As discussed above, this case is in its infancy and inclusion of Proposed Intervenors will not lead to undue delay or prejudice to the other parties. Additionally, Proposed Intervenors' claims and defenses share common questions of law and fact with the main action. *Freedom from Religion Found,* 644 F.3d at 844. Specifically, Proposed Intervenors intend to set forth legal arguments refuting the sufficiency of Plaintiff's claims in the Amended Complaint.

There is adequate support for this Court to find that the Proposed Intervenors meet the standards for permissive intervention pursuant to FRCP 24(b)(1).

## IV.    Conclusion

For the reasons set forth above, Proposed Intervenors respectfully request that the Court grant this motion to Intervene as of right pursuant to Rule 24(a), or in the alternative, grant permissive intervention under Rule 24(b).

Dated: September 18, 2025            Respectfully submitted,


                                    */s/ Jessica L. Blome*
                                    Jessica L. Blome
                                    Cal. Bar No. 314898
                                    GREENFIRE LAW, PC
                                    2748 Adeline Street, Suite A
                                    Berkeley, CA 94703
                                    (510) 900-9502
                                    jblome@greenfirelaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott Edwards
NY Bar No. 3001575
Animal Wellness Action
611 Pennsylvania Ave., S.E. #136
Washington, D.C. 20003
(443) 865-3600
sedwards@animalwellnessaction.org
*Pro hac vice application forthcoming*

*Attorneys for Proposed Intervenors*
*The Center for a Humane Economy*
*and Animal Wellness Action*

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Proposed Defendant-Intervenors, certifies that this brief contains 3,501 words, which complies with the word limit of L.R. 11-6-1.

Dated: September 18, 2025

/s/ Jessica L. Blome
Jessica L. Blome