Rob Bonta
Attorney General of California
Anya M. Binsacca
Supervising Deputy Attorney General
Kristin Liska (SBN 315994)
Kristen C.A. Kido (SBN 335667)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6528
  Fax:  (916) 731-2124
  E-mail:  Kristen.Kido@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his Official Capacity as Governor of California; KAREN ROSS, in her Official Capacity as Secretary of the California Department of Food & Agriculture; ERICA PAN, in her Official Capacity as Director of the California Department of Public Health; and ROB BONTA, in his Official Capacity as Attorney General of California,**<br><br>Defendants.<br><br>**HUMANE WORLD FOR ANIMALS; ANIMAL LEGAL DEFENSE FUND; ANIMAL EQUALITY; THE HUMANE LEAGUE; FARM SANCTUARY; COMPASSION IN WORLD FARMING, INC.; ANIMAL OUTLOOK; ASSOCIATION OF CALIFORNIA EGG FARMERS; THE CENTER FOR A HUMANE ECONOMY; ANIMAL WELLNESS ACTION,**<br><br>Defendant-Intervenors. | 2:25-cv-06230-MCS-AGR<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER F.R.C.P. RULE 12(B)**<br><br>*Request for Judicial Notice, Proposed Order Filed Concurrently*<br><br>Date:          January 12, 2026<br>Time:          9:00 a.m.<br>Courtroom:  7C<br>Judge:        The Honorable Mark C. Scarsi<br>Trial Date:   None Set<br>Action Filed: 7/09/2025 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 3

BACKGROUND ..................................................................................................... 4

    I.     California's Hen Enclosure Requirements ........................................... 4

    II.    The Inspection Act ............................................................................. 6

    III.   Challenges to California's Hen Enclosure Laws ................................ 8

LEGAL STANDARD ............................................................................................. 9

ARGUMENT ........................................................................................................ 11

    I.     The United States Lacks Standing to Bring This Suit ...................... 11

    II.    The Egg Product Inspection Act Does Not Preempt the Hen Enclosure Laws .............................................................................. 14

          A.    Proposition 12 and AB 1437 Do Not Impose Standards of Quality, Condition, Weight, or Grade of Eggs ........................ 15

          B.    Regulation 1320.4 Is Not Preempted by the Inspection Act's Labeling and Packaging Requirements .......................... 19

    III.   The Governor Is Not A Proper Party to This Action ........................ 20

CONCLUSION ..................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Armstrong v. Exceptional Child Center, Inc.*
    575 U.S. 320 (2015) ................................................................. 14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................. 10

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*
    729 F.3d 937 (9th Cir. 2013) .................................................... 21

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*
    870 F.3d 1140 (9th Cir. 2017) ............................................ 14, 18

*Carney v. Adams*
    592 U.S. 53 (2020) ................................................................... 11

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
    710 F.3d 946 (9th Cir. 2013) .................................................... 18

*Cipollone v. Liggett Grp., Inc.*
    505 U.S. 504 (1992) ............................................................ 14, 18

*Coalition to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012) .................................................. 21

*Geo Group, Inc. v. Newsom*
    50 F.4th 745 (9th Cir. 2022) .................................................... 12

*Hughes v. Oklahoma*
    441 U.S. 322 (1979) ................................................................. 18

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008) .................................................. 10

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014) .................................................. 10

*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir. 1992) .................................................... 21

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lujan v. Defs. of Wildlife*
　　504 U.S. 555 (1992) ............................................................. 12

*Missouri ex rel. Koster v. Harris*
　　847 F.3d 646 (9th Cir. 2017) .................................................. 8

*Missouri v. California*
　　586 U.S. 1065 (2019) ......................................................... 3, 8

*Missouri v. Harris*
　　58 F. Supp. 3d 1059 (E.D. Cal. 2014) ...................................... 8

*National Audubon Soc'y Inc. v. Davis*
　　307 F.3d 835 (9th Cir. 2002) ................................................ 21

*National Audubon Soc'y Inc. v. Davis*
　　312 F.3d 416 (9th Cir. 2002) ................................................ 21

*Nat'l Pork Producers Council v. Ross*
　　6 F.4th 1021 (9th Cir. 2021) ................................................ 10

*Pennhurst State Sch. & Hosp. v. Halderman*
　　465 U.S. 89 (1984) ........................................................ 20, 21

*Pistor v. Garcia*
　　791 F.3d 1104 (9th Cir. 2015) .............................................. 10

*Spokeo, Inc. v. Robins*
　　578 U.S. 330 (2016) .......................................................... 11

*Stenberg v. Carhart*
　　530 U.S. 914 (2000) .......................................................... 18

*The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*
　　353 F.3d 1051 (9th Cir. 2003) .............................................. 17

*United States v. City of Arcata*
　　629 F.3d 986 (9th Cir. 2010) ............................................... 12

*United States v. King County*
　　122 F.4th 740 (9th Cir. 2024) .............................................. 12

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Mattson*
  600 F.2d 1295 (9th Cir. 1979) ....................................................11, 12, 13

*United States v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) ...................................................................10

*United States v. San Jacinto Tin Co.*
  125 U.S. 273 (1888) ................................................................................11

*Watison v. Carter*
  668 F.3d 1108 (9th Cir. 2012) ................................................................10

*Ex parte Young*
  209 U.S. 123 (1908) ................................................................................21

STATUTES

United States Code, Title 7 (7 U.S.C.)
  § 1621 *et seq.* ..............................................................................7, 15, 17

United States Code, Title 21 (21 U.S.C.)
  § 1032 *et seq.* .................................................................................*passim*

California Health & Safety Code
  §§ 25990-25994 ...............................................................................*passim*
  §§ 25995-25996.3 ............................................................................*passim*

REGULATIONS

Code of Federal Regulations, Title 3 (3 C.F.R.)
  § 1320.1(a) ..............................................................................................16

Code of Federal Regulations, Title 7 (7 C.F.R.)
  § 56.1 ...............................................................................................15, 17
  § 57.1 .......................................................................................7, 15, 16, 17

Code of Federal Regulations, Title 9 (9 C.F.R.)
  § 590.5 ...............................................................................................7, 17
  § 590.35 .....................................................................................................8
  § 590.411(f)(1) ....................................................................................7, 20

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Code of Regulations
§ 1320, *et. seq.* .................................................................*passim*

CONSTITUTIONAL PROVISIONS

United States Constitution
Article III ...........................................................................11
Article VI, cl. 2 .................................................................14
Eighth Amendment ............................................................13
Eleventh Amendment ..........................................11, 20, 21
Thirteenth Amendment ......................................................13
Fourteenth Amendment ......................................................13

COURT RULES

Federal Rules of Civil Procedure
Rule 12(b)(1) ..................................................................9, 10
Rule 12(b)(6) ....................................................................10

OTHER AUTHORITIES

*Extrinsic,* WEBSTER'S DICTIONARY, https://www.merriam-
webster.com/dictionary/extrinsic .......................................17

*Inherent,* WEBSTER'S DICTIONARY, https://www.merriam-
webster.com/dictionary/inherent ........................................17

*Intrinsic,* WEBSTER'S DICTIONARY https://www.merriam-
webster.com/dictionary/intrinsic ........................................17

UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES
STANDARDS, GRADES, AND WEIGHT CLASSES FOR SHELL EGGS,
AMS 56 (2000) ...........................................................15, 16

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on January 12, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Mark C. Scarsi, United States District Judge, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants the State of California; Gavin C. Newsom, in his official capacity as Governor of California; Karen Ross, in her official capacity as Secretary of the California Department of Food & Agriculture; Erica Pan, in her official capacity as Director of the California Department of Public Health; and Rob Bonta, in his official capacity as Attorney General of California, will and hereby do move this Court to dismiss without leave to amend Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

This motion is brought on the grounds that Plaintiff lacks standing to bring this action, and that the First Amended Complaint fails to state a plausible theory of preemption upon which relief can be granted. This motion is based on this Notice, the Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all papers, and pleadings on file in this action, and such other matters as the Court may deem appropriate. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 27, 2025. Parties were not able to reach a consensus to avoid the filing of this Motion.

Dated:  October 6, 2025                                      Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN A. LISKA
Deputy Attorney General


*/s/ Kristen C.A. Kido*
KRISTEN C.A. KIDO
Deputy Attorney General
*Attorneys for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The United States seeks to preempt California laws governing the conditions of raising hens, not by enacting a new law that expressly preempts them, but instead by asking this Court to declare that a different, entirely unrelated statute, already does.  The federal Egg Products Inspection Act ("Inspection Act"), which the United States contends preempts California's animal husbandry laws, governs the standards and grades of eggs and egg products to ensure that only food products fit for human consumption enter the marketplace.  In contrast, the challenged California laws govern the husbandry of egg-laying hens to ensure animals receive humane treatment and to prevent the spread of disease.  For over a decade, egg producers—such as Intervenor-Defendant California Association of Egg Farmers— have abided by both sets of rules without issue.  None has ever contended that the laws challenged in this case are preempted.

For good reason: there is no preemption.  Indeed, during the first Trump Administration, the United States *itself* previously agreed that the Inspection Act does not preempt California's cage-free requirements.  *See* RJN Ex. A (Brief of United States as *Amicus Curiae* at 7, *Missouri v. California*, 586 U.S. 1065 (2019) (No. 22O148)).  Now, it has changed position.  The United States admits that this sudden and belated about-face comes not due to concerns about the proscriptions of the Supremacy Clause.  Rather, it expressly states that this lawsuit is part of a presidential referendum against the "crushing regulatory burden" allegedly created by laws California voters and representatives enacted to govern conduct within California's borders.  So, in place of pleading a cognizable theory of preemption, the United States simply insists that that the challenged laws are to blame for an increase in the cost of living.  That is not true, but in any event, the United States has entirely failed to state a claim that California's allegedly inflationary regulations of egg-laying hen husbandry are prohibited by the Supremacy Clause.

3

This case should be dismissed in its entirety without leave to amend.  First, the United States lacks standing to bring this claim.  It has not articulated any harm flowing *to the United States* from the challenged laws, let alone legally cognizable harm sufficient to constitute injury-in-fact as required to establish standing.  Second, the challenged laws are not preempted by the express provisions of the Inspection Act.  The Inspection Act prohibits state and local laws from prescribing standards of quality, condition, weight, quantity, or grade for eggs based on intrinsic characteristics correlated with their suitability for human consumption.  The California laws establish minimum animal husbandry standards for egg-laying hens and prohibit the sale of eggs in California that were produced in contravention of those standards.  They impose no requirements whatsoever *with respect to the eggs themselves*.  The Inspection Act also prohibits labeling requirements for *egg product packaging* that differ from the Inspection Act's requirements, but the California laws only require that *shipping documents* note whether shell eggs and liquid eggs sold within California came from hens raised in compliance with the requisite confinement standards.  Thus, there is no provision in any of the challenged laws that falls within the preemptive scope of the Inspection Act.

## BACKGROUND

### I.  CALIFORNIA'S HEN ENCLOSURE REQUIREMENTS

California laws regulate the standards of treatment and confinement for farm animals, including egg-laying hens.  The rules are the result of a series of enactments beginning with Proposition 2 (2008), which set out to prohibit the cruel confinement of farm animals.[1]  Two years later, AB 1437 added the requirement that no shell eggs could be sold in California if the egg-laying hens were confined in violation of Proposition 2's provisions.  *See* Cal. Health & Safety Code § 25995[2].

---

[1] The provisions of Proposition 2 are now found in Cal. Health & Safety Code § 25991(e)(1).

[2] All references to the Health & Safety Code herein refer to the California Health & Safety Code.

Finally, in 2018, Proposition 12 amended the hen enclosure requirements such that egg-laying hens must be provided with a certain minimum amount of floor space. *See* Health & Safety Code § 25991(e)(2-5). The California Department of Food and Agriculture has also promulgated regulations to effectuate the purposes of these laws. *See* 3 Cal. Code Regs. § 1320, *et. seq.* Proposition 2, AB 1437, Proposition 12, and the implementing regulations are herein referred to collectively as the "Hen Enclosure Laws."

Currently, the Hen Enclosure Laws prohibit the sale of shell eggs and liquid eggs in California if the seller knows or should have known that the egg-laying hen was confined in a "cruel manner." *See* Health & Safety Code §§ 25990(b)(3)-(4); 25996. Confinement in a cruel manner is defined, in part, as confinement of a covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely." *Id.* § 25991(e)(1); *see also* 3 Cal. Code Regs § 1320.1(a)(1). Additionally, the Hen Enclosure Laws require that egg-laying hens have a minimum amount of usable floorspace, incorporating the 2017 edition of the United Egg Producers' Animal Husbandry Guidelines for U.S. Egg-Laying Flocks: Guidelines for Cage-Free Housing. *Id.* subs. (e)(5). Confinement in a cruel manner also includes any confinement "other than a cage-free housing system." *Id.* A cage-free housing system is a controlled environment in which hens "are free to roam unrestricted; are provided enrichments that allow them to exhibit natural behaviors . . . and within which farm employees can provide care while standing within the hens' usable floorspace." *Id.* subs. (c); *see also* 3 Cal. Code Regs. § 1320.1(2) (same). Finally, the Hen Enclosure Laws expressly provide that their requirements are in addition to, and not in lieu of, "any other laws protecting animal welfare." Health & Safety Code §§ 25994, 25996.3.

In order to functionally implement the cage-free requirements, the regulations promulgated under Proposition 12 require that shipping documents clearly indicate whether shipments of eggs were produced in facilities that satisfy California's

5

animal husbandry laws.  *See* 3 Cal. Code Regs. § 1320.4.  Thus, "[a]ll documents of title and shipping manifests" must include the statement that the shipment is "Egg CA Prop 12 Compliant" (*id.* subs. (a)(1)), or, if not compliant, that the shipment is "For Export," "For Transshipment," "Not Prop 12 Compliant," or "Only for use at" a federally inspected facility for purposes not governed by Proposition 12.  (*id.* subs. (a)(2)-(3)).  Further, the regulations prohibit a person from falsely advertising eggs or egg products as Proposition 12 compliant or as "cage-free" if they do not comport with the Hen Enclosure Laws.  *Id.* subs. (b), (c).

## II.  THE INSPECTION ACT

Federal law imposes regulations on eggs and egg products to protect consumers.  Congress passed the Egg Products Inspection Act in 1970 in order "to provide for the inspection of certain egg products, restrictions upon the disposition of certain qualities of eggs, and uniformity of standards for eggs, and otherwise regulate the processing and distribution of eggs and egg products … to prevent the movement or sale for human food, of eggs and egg products which are adulterated or misbranded or otherwise in violation of this chapter."  21 U.S.C. § 1032.  The statute defines "adulterated" as any egg or egg product that contains poisonous or deleterious substances, is injurious to health, unsafe, or otherwise unfit for human food.  *See id.* § 1033.

To achieve its purpose, the Inspection Act sets out a scheme whereby the Secretary of the U.S. Department of Agriculture ("USDA") is empowered to inspect facilities producing "egg products" (that is, dried, frozen, or liquid eggs, as distinct from shell eggs, 21 U.S.C. § 1033(f)), and to segregate—and if necessary, destroy—adulterated items.  *See id.* § 1034(a)-(c).  As to shell eggs, the USDA, sharing certain oversight with the Department of Health and Human Services, is also tasked with ensuring that shell eggs are properly refrigerated and pasteurized, that facilities are sanitary, and generally that egg handlers are not engaging in any acts prohibited by the Inspection Act.  *See id.* subs. (e), (d), §§ 1035, 1036.

Prohibited acts include buying, selling, and possessing adulterated eggs and egg products for use as human food, and failing to comply with the inspection, refrigeration, pasteurization, and labeling requirements. *See id.* § 1037(a)-(b), (e).

Further, the Inspection Act provides that the standards for classifying and evaluating eggs shall be uniform throughout the country, and shall conform to the standards of quality, condition, weight, quantity, or grade classes for eggs as set forth by the Agricultural Marketing Service of the USDA. *See* 21 U.S.C. § 1033(r); 7 U.S.C. § 1621 *et seq.*; 7 C.F.R. § 57.1. 9; C.F.R. § 590.5. The Inspection Act and its implementing regulations also impose labeling requirements for egg products produced at "official plants." Official plants are those egg product processing facilities that must be inspected by the USDA under Section 1034 of the Inspection Act. *Id.* § 1033(q). After pasteurization, the containers of such egg products must bear the official USDA inspection legend and official plant number. *Id.* § 1036(a). Egg product containers must not include labels that are false, misleading, or otherwise not approved by the USDA. *Id.* subs. (b); 9 C.F.R. § 590.411(f)(1). As for shell eggs, the only labeling requirement is that their containers state that refrigeration is required. 21 U.S.C. § 1034(e).

The Inspection Act contains limited preemption provisions. Specifically, the Inspection Act prohibits States and local jurisdictions from passing rules that (1) "require the use of standards of quality, condition, weight, quantity, or grade which are in addition to or different from the official Federal standards;" (2) "impose temperature requirements pertaining to eggs packaged for the ultimate consumer which are in addition to, or different from, Federal requirements;" and (3) "require labeling to show the State or other geographical area of production or origin … [or impose] [l]abeling, packaging, or ingredient requirements, in addition to or different than those made under this chapter . . . with respect to egg products processed at any official plant . . ." 21 U.S.C. § 1052(b). Apart from these three contexts, the Inspection Act "shall not invalidate any law or other provisions of any State or

other jurisdiction in the absence of a conflict with this chapter." *Id.*; *see also* 9 C.F.R. § 590.35 ("Any State or local jurisdiction may exercise jurisdiction with respect to eggs and egg products for the purpose of preventing the distribution for human food purposes of any such articles which are outside of the official plant and are in violation of this part or any of said Federal Acts or any State or local law consistent therewith.").

## III.  CHALLENGES TO CALIFORNIA'S HEN ENCLOSURE LAWS

The current suit is not the first preemption challenge to the Hen Enclosure Laws.  In 2014, a coalition of states led by Missouri sued California officials alleging, as here, that the Hen Enclosure Laws were preempted by the Inspection Act, as well as violated the Commerce Clause of the U.S. Constitution.  *See Missouri v. Harris*, 58 F. Supp. 3d 1059 (E.D. Cal. 2014).  The Ninth Circuit affirmed dismissal of that case on the grounds that the States could not maintain *parens patriae* standing on the basis of alleged harm to egg farmers.  *See Missouri ex rel. Koster* v. *Harris*, 847 F.3d 646, 651-655 (9th Cir. 2017), *cert denied* 137 S. Ct. 2188 (2017).  Missouri then led a group of states in a motion for leave to file a bill of complaint against the State of California in the U.S. Supreme Court, raising the same legal claims.  *See Missouri*, *et al. v. State of California,* 586 U.S. 1065 (2019) (No. 22O148).  That motion was likewise denied.  *Id.*  But more relevant here is that the United States filed an amicus brief in support of the State of California, in which it affirmatively argued that California's animal welfare laws were *not* preempted by the Inspection Act.  *See* RJN Ex. A (Brief of United States as *Amicus Curiae*, *Missouri v. California*, 586 U.S. 1065) at 18 ("[T]he California Egg Laws are not preempted by the federal statute that plaintiffs invoke, 21 U.S.C. 1052(b).").  Six years later, the United States has flipped its position.

The United States brought this suit on July 9, 2025, against the State of California, and various state officials in their official capacities:  Governor Gavin Newsom, Secretary of the California Department of Food & Agriculture Karen

1    Ross, Director of the California Department of Public Health Erica Pan, and

2    Attorney General Rob Bonta.  Plaintiff amended its Complaint on September 3,

3    2025.  The First Amended Complaint ("FAC") begins by alleging that the Hen

4    Enclosure Laws are responsible for an increase in the cost of eggs and thus for

5    creating a burden on American consumers.  *See, e.g.,* FAC ¶¶ 1-2, 5, 7.  Plaintiff

6    then outlines the legislative history of the Hen Enclosure Laws, acknowledging that

7    "Proposition 2 was an animal welfare measure" amended by AB 1437 and then by

8    Proposition 12.  *See* FAC ¶¶ 29-30, 34.

9        Plaintiff claims that "[a]lthough Proposition 12's proponents also purport to be

10    concerned with the welfare of egg-laying hens, California's code underscores that

11    California's intent is instead to regulate the quality and condition of eggs

12    themselves."  FAC ¶ 48.  Based on this unsupported assertion, Plaintiff concludes

13    that the Hen Enclosure Laws are preempted by the Inspection Act's express

14    prohibition of laws "in addition to" or "different than" the federal egg standards of

15    quality, condition, weight, quantity, or grade.  *See* FAC ¶¶ 59, 63, Prayer for Relief

16    ¶ 3.  Plaintiff further alleges that Regulation 1320.4 is expressly preempted by the

17    Inspection Act's prohibition against labeling requirements in addition to or different

18    from the Inspection Act's.  *Id.* ¶ 66.  By this action, the United States seeks a

19    declaration that the challenged laws are invalid as preempted, and to enjoin their

20    enforcement.  *Id.* Prayer.

21        On September 23, 2025, the Court granted intervention motions by Intervenor-

22    Defendants Humane World for Animals, Animal Legal Defense Fund, Animal

23    Equality, The Humane League, Farm Sanctuary, Compassion in World Farming,

24    Inc., Animal Outlook, the Association of California Egg Farmers, The Center for a

25    Humane Economy, and Animal Wellness Action.  ECF 354.

26                                    **LEGAL STANDARD**

27        Under Rule of Civil Procedure 12(b)(1), a party may move to dismiss a

28    complaint on the basis that there is no subject matter jurisdiction.  In such

9

situations, the party asserting jurisdiction has the burden of proving it exists. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). In analyzing a motion under Rule 12(b)(1), a court does not presume the truthfulness of a plaintiff's allegations and may hear evidence not presented in the complaint. *Id.* A motion under Rule 12(b)(1) is the proper vehicle to raise the argument that a plaintiff lacks standing. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Where a defendant raises a facial challenge to standing—contending that the allegations in the complaint, if taken to be true, do not establish standing—a court resolves the motion as it would under Rule 12(b)(6). *Id.*

Under Rule 12(b)(6), a complaint may also be dismissed for failure to state a claim upon which relief can be granted. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (citation omitted). A motion to dismiss is properly granted where the complaint fails, as a matter of law, to state a plausible claim for relief. *See Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023) (upholding dismissal of dormant commerce clause challenge to Proposition 12). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In ruling on a motion to dismiss, the court may consider documents referenced in a complaint as well as matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). At this stage, the court "[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Leite*, 749 F.3d at 1121. Dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (internal quotation marks and citation omitted).

**ARGUMENT**

The FAC should be dismissed in its entirety because the United States lacks a cognizable injury sufficient for standing to bring this action. Further, the plain language of the statutes reveals that the Hen Enclosure Laws are not preempted by the Inspection Act as a matter of law. Finally, even if this case were not dismissed in its entirety, Governor Newsom should be dismissed because the Eleventh Amendment bars suit against him.

## I.    THE UNITED STATES LACKS STANDING TO BRING THIS SUIT

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* These standing requirements apply equally to the federal government as a plaintiff, just as they to do other private or government plaintiffs: "the government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter." *United States v. Mattson*, 600 F.2d 1295, 1300 (9th Cir. 1979) (quoting *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888)).

To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted). For an injury to be particularized, the plaintiff must show that the challenged conduct "affect[s] the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). That is, "a plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest." *Carney v. Adams* 141 S. Ct. 493, 499 (2020) (citation

11

omitted).  This requirement, too, "has not been limited to private individuals and organizations, but held to include governmental units as well."  *Mattson*, 600 F.2d at 1300.  The United States has failed to establish actual injury here.

For one, the United States is not the "target of the challenged government action."  *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010).  The Hen Enclosure Laws challenged here apply to businesses and sellers of eggs.  *See* Health & Safety Code §§ 25990(b)(3), (b)(4), 25996.  The United States does not allege that it engages in the sale of shell eggs or liquid eggs in California.  It therefore is not subject to the regulations that it seeks to challenge in this suit.  This fact makes standing "substantially more difficult to establish."  *City of Arcata*, 629 F.3d at 989 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 562 (1992).

Nor has the United States identified any other tangible impact of the challenged regulations on the federal government itself that would constitute an injury in fact.  It has not contended, for instance, that the challenged regulations threaten to impede the federal government's ability to carry out its activities.  *Cf. United States v. King County*, 122 F.4th 740, 751 (9th Cir. 2024) (holding United States had standing to challenge county executive order that prevented Immigration and Customs Enforcement charter flights from being refueled at local airport); *City of Arcata,* 629 F.3d 986 (holding United States had standing to challenge city laws prohibiting military recruitment of individuals under age 18).  Nor has it contended that the challenged regulations threaten to impede the government's ability to enter into contracts.  *Cf. Geo Group, Inc. v. Newsom*, 50 F.4th 745, 754 (9th Cir. 2022) (holding United States had standing to challenge state law that prohibited contracting with private detention facilities).  Nothing in the FAC at all alleges that the *United States itself* has experienced *any* harm that is caused by the challenged state laws and regulations or that would be remediated by enjoining those laws or regulations—that is, that the United States has not experienced *any* injury whatsoever, let alone one sufficient for standing purposes.

1       The Ninth Circuit's decision in *Mattson* is instructive.  There, the United

2 States brought suit "seeking injunctive relief based on the deprivation of

3 constitutional rights guaranteed by the eighth, thirteenth, and fourteenth

4 amendments" of group of individuals in a facility in Montana.  *Mattson*, 600 F.2d at

5 1297.  The Ninth Circuit held that the United States lacked standing to bring such a

6 suit.  *Id.* at 1299.  It noted that the United States had made "no assertion of a

7 property interest, interference with national security or a burden on interstate

8 commerce" that might constitute an injury sufficient for standing purposes.  *Id.* at

9 1298-1299.  Rather, the United States instead pointed to a "number of programs"

10 that involved "providing funds" to the relevant facilities and "acting in a

11 supervisory role."  *Id.* at 1299.  This interest was insufficient to provide standing.

12 *Id.*  This conclusion was further buttressed by the Ninth Circuit's concerns that a

13 more-expansive view of standing for the United States "would require a court to

14 rule on important constitutional issues in the abstract, and allow a potential abuse of

15 the judicial process."  *Id.* at 1300.  "This could distort the role of the judiciary," the

16 Ninth Circuit warned.  *Id.*

17       As in *Mattson*, the United States here has not alleged any "property interest,

18 interference with national security or a burden on interstate commerce."  *Mattson*,

19 600 F.2d at 1297.  Instead, it has presented this Court with a request to "rule on

20 important constitutional interests in the abstract."  *Id*. at 1300.  The Court should

21 not take the United States up on its request to do so—especially when those

22 regulated by the challenged laws have never asked a court, in the many years the

23 challenged laws have been in effect, to address the legal issues raised here.

24 Because it has not articulated a particularized injury, the United States lacks

25 standing and this action should be dismissed with prejudice.

26

27

28

## II. THE EGG PRODUCT INSPECTION ACT DOES NOT PREEMPT THE HEN ENCLOSURE LAWS

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Thus, Courts "must not give effect to State laws that conflict with federal laws." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015).

Courts recognize three categories of preemption: first, Congress may manifest its intent to preempt state or local laws in the statute's express language (*i.e.*, "express preemption"); second, state law is preempted where it is impossible to comply with both the federal and state laws (*i.e.*, "conflict preemption"); and third, Congress may so entirely occupy a field that it leaves no room for states to supplement it with their own laws (*i.e.*, "field preemption"). *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Here (and despite having argued the exact opposite position in prior litigation, *see* RJN A at 18-20), Plaintiff alleges the Inspection Act expressly preempts the Hen Enclosure Laws. FAC ¶ 7.[3]

Where, as here, Congress expressly delineates the scope of preemption, "the pre-emptive scope of the [statute] is governed entirely by the express language" of the preemption provisions. *Cipollone*, 505 U.S. at 517. And if the text of a preemption provision is susceptible to multiple interpretations, courts "accept the reading that disfavors preemption." *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1146 (9th Cir. 2017) (internal quotations omitted). The Inspection Act is consistent with these principles: it provides that, aside from the enumerated areas of preemption, state and local laws regulating eggs and egg products are permitted so long as they do not conflict with the Inspection Act. 21 U.S.C. § 1052(b).

---

[3] The United States does not contend that the challenged laws are preempted under either conflict preemption or field preemption.

### A.   Proposition 12 and AB 1437 Do Not Impose Standards of Quality, Condition, Weight, or Grade of Eggs

The Inspection Act preempts state and local laws that "require the use of standards of quality, condition, weight, quantity, or grade which are in addition to or different from the official Federal standards." 21 U.S.C. § 1052(b).  Plaintiff alleges that the Hen Enclosure Laws are preempted by the Inspection Act because they impose standards in addition to or different from the federal standards (FAC ¶¶ 58-59, 62-63), but the Hen Enclosure Laws do not prescribe *any* standards for eggs.

The Inspection Act defines "standards" as those maintained by the Agricultural Marketing Service of the U.S. Department of Agriculture.  21 U.S.C. §1033(r); *see also* 7 U.S.C. § 1621, *et seq.* (Secretary of Agriculture shall "develop . . . standards of quality, condition, quantity, grade, and packaging . . . in order to encourage uniformity and consistency in commercial practices."); 7 C.F.R. § 57.1 ("Official standards means the official U.S. standards of quality, grades, and weight classes for shell eggs maintained by and available from Poultry Programs, [Agricultural Marketing Service].") ("Egg Grading Standards").  Those Egg Grading Standards lay out the familiar system (Grade AA, Grade A, etc.) found on eggs sold at supermarkets around the country.[4]  The Egg Grading Standards are based on the inherent physical condition and composition *of the eggs*, including, for instance, the shape of the shell, the presence and size of blood spots, and whether there are defects in the yolk.  *See* RJN Ex. B (UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES STANDARDS, GRADES, AND WEIGHT CLASSES FOR SHELL EGGS, AMS 56 (2000)) at 2-4; 6-8; *see also* 7 C.F.R. § 56.1 ("Condition means any characteristic *detected by sensory examination* (visual, touch, or odor), including the state of preservation, cleanliness, soundness, or fitness for human food that affects the marketing of the product;" "Quality means the *inherent*

---

[4] The USDA makes its grading system publicly available at https://www.ams.usda.gov/sites/default/files/media/Shell_Egg_Standard%5B1%5D.pdf.).

*properties of any product* which determine its relative degree of excellence.")
(emphasis added); 7 C.F.R. § 57.1 (similarly defining "condition" and "quality").
The Egg Grading Standards also provide that eggs sold in commerce for human
consumption fall into weight classes ranging from "Jumbo" (minimum net weight
of 29 ounces for individual eggs) to "Peewee" (less than 17 ounces per egg).  RJN
Ex. B at 9.  The Agricultural Marketing Service's stated purpose in promulgating
the Egg Grading Standards is to ensure "[c]onsumers can purchase officially graded
products with the confidence of receiving quality in accordance with the official
identification" (*id.* at Forward), which is consistent with the Inspection Act's
purpose of providing for the "uniformity of standards for eggs" (21 U.S.C. § 1032).
The Egg Grading Standards are silent as to the conditions in which *egg-laying hens*
are kept.

    In contrast to the Inspection Act and the Egg Grading Standards it adopts, the
Hen Enclosure Laws contain no language that can be reasonably interpreted to
impose "standards" of quality, condition, weight, quantity, or grade *of eggs* as those
terms are used in the Inspection Act.  Indeed, Plaintiff points to none.  The Hen
Enclosure Laws exclusively impose housing requirements for egg-laying *hens* on
California egg farmers and any business wishing to sell shell eggs and liquid eggs
in California.  *See* Health & Safety Code §§ 25990(a)-(b); 25996; 3 CFR §
1320.1(a).  Those requirements include, in part, that the egg-laying hen must be
able to lie down, stand up, fully extend its limbs, and turn around freely, and must
have a minimum amount of floorspace.  Health & Safety Code § 25991; 3 CFR §
1320.1(a).  The Hen Enclosure Laws place no requirements *on eggs*, whatsoever.

    To bridge this disconnect between the federal and state laws, Plaintiff urges
that California's animal husbandry requirements are actually "new standards of
quality" for eggs, because hens under less stress may produce fewer pathogens that
may transmit illnesses to humans.  FAC ¶¶ 29-30; 48, 57-59.  Plaintiff emphasizes
that the California Legislature's intent included to protect California consumers

from such food-borne illnesses. *Id;* Health & Safety Code § 25995. But Plaintiff's strained reading ignores completely the meaning of "standards," "condition," and "quality" as used in the Inspection Act, which mean the Egg Grading Standards. 21 U.S.C. §1033(r); 7 U.S.C. § 1621; 7 C.F.R. § 57.1. Federal law regulates those qualities of eggs themselves, and state law may not. That state law regulates something else (hen enclosures) that may indirectly have an effect on pathogens in eggs is immaterial.

Moreover, Plaintiff's claim that the Hen Enclosure Laws regulate the "quality" of eggs because animal husbandry is an "inherent" property of eggs also fails on its face. *See* FAC ¶ 57; *see also* 7 C.F.R. §§ 56.1, 57.1; 9 C.F.R. § 590.5 (each defining "quality" as "the *inherent* properties of any product which determine its relative degree of excellence.") (emphasis added). Webster's Dictionary defines "inherent" as "involved in the constitution or essential character of something; belonging by nature or habit; intrinsic."[5] *Inherent,* WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/inherent. "Intrinsic" is defined as "belonging to the essential nature or constitution of a thing," and as "originating or due to causes *within a body, organ, or part*; originating and included *wholly within an organ or part*." *Intrinsic,* WEBSTER'S DICTIONARY https://www.merriam-webster.com/dictionary/intrinsic. The way that the hen who laid an egg was confined is not part of the "constitution or essential character" *of the egg*; it is not originating "within [the egg's] body, organ or part." It is, rather, "extrinsic" to it. *See Extrinsic,* WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/extrinsic ("extrinsic" means: "not forming part of or belonging to a thing; originating on the outside, especially, originating outside a

_____

[5] Neither the Inspection Act nor the implementing regulations define "inherent." Thus, courts may look to the plain meaning of the word. *See, e.g., The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1061 (9th Cir. 2003), *amended on reh'g sub nom. Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 360 F.3d 1374 (9th Cir. 2004).

part and acting upon the part as a whole."). Thus, the fact that the Hen Enclosure Laws may provide a health and safety benefit to consumers does not make it a "standard" under the Inspection Act. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,* 710 F.3d 946, 958 (9th Cir. 2013) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.") (quoting *Stenberg v. Carhart,* 530 U.S. 914, 942 (2000)).

Finally, Plaintiff's emphasis on the California Legislature's intent misunderstands preemption law. It is the preemptive intent *of the United States Congress* in passing the Inspection Act that is the cornerstone of preemption analysis, not the intent of the state legislature. *See, e.g., Cipollone*, 505 U.S. at 516. Congress's intent to preempt state laws under the Inspection Act is clear: "no State or local jurisdiction may require the use of standards of quality, condition, weight, quantity, or grade which are in addition to or different from [the Egg Grading Standards] … Otherwise the provisions of this chapter shall not invalidate any law or other provisions of any State or other jurisdiction in the absence of a conflict with this chapter." 21 U.S.C. § 1052(b). Congress did not include any provision in the Inspection Act preempting a State's authority to regulate for the purpose of protecting its citizens' health and safety generally—an historic police power of the State. *See, e.g., Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979) (health and safety of citizens and animals both legitimate state interests). This Court need not accept Plaintiff's invitation to read such a proscription into the statute. *See Cipollone*, 505 U.S. at 517; *Ass'n des Éleveurs de Canards et d'Oies*, 870 F.3d at 1146.

Because the Hen Enclosure Laws regulate conditions for hens and impose no standards of quality, condition, weight, quantity, or grade for eggs, they are not preempted by the Inspection Act.

**B.    Regulation 1320.4 Is Not Preempted by the Inspection Act's Labeling and Packaging Requirements**

Section 1036 of the Inspection Act requires that egg products produced at official plants "bear in distinctly legible form on their *shipping containers or immediate containers,* or both … the official inspection legend and official plant number, of the plant where the products were processed" and other information as promulgated by the USDA "to describe the products adequately and to assure that they will not have false or misleading labeling."  21 U.S.C. § 1036(a) (emphasis added).  Further, "[n]o labeling or *container* shall be used for egg products at official plants if it is false or misleading or has not been approved as required by the regulations of the Secretary."  *Id.* subs. (b) (emphasis added).  The Inspection Act preempts "[l]abeling, packaging, or ingredient requirements, in addition to or different than those made under this chapter … with respect to egg products processed at any official plant[.]" 21 U.S.C. § 1052(b).  Plaintiff alleges that Section 1320.4 of Title 3 of the California Code of Regulations is preempted under this provision.  FAC ¶¶ 65-66.  But even the most superficial review of the defined terms in the Inspection Act reveals that Regulation 1320.4 is outside the scope of the Inspection Act's labeling requirements.

The Inspection Act defines a "container" or a "package" as "any box, can, tin, plastic, or other receptacle, wrapper, or cover."  21 U.S.C. § 1033(d).  There are two kinds of "containers:" an "immediate container" (which is a "consumer package; or any other container in which egg products… are packed") and a "shipping container" (which is "any container used in packaging a product packed in an immediate container").  *Id.*  In essence, the Inspection Act's labeling requirements dictate that certain information, and no misleading information, shall be placed on the physical receptacle in which an egg product is packaged or shipped.  21 U.S.C. §§ 1033(d), 1036.

Regulation 1320.4 imposes no labeling requirements for egg receptacles, containers, or packages.  Instead, Regulation 1320.4(a) requires that the "*shipping documents*," including documents of title, shipping manifests, shipping invoices, and bills of lading, must specify whether the shipments contain eggs produced by hens housed in a cage-free system, or if instead they are destined for export, transshipment, or transfer to a specific facility.  *See* 3 Cal. Code Regs. § 1320.4.  Thus, Regulation 1320.4 does not impose requirements for labeling on the "box, can, tin, plastic, or other receptacle" in which egg products are packaged and shipped.  *Compare* 21 U.S.C. §§ 1033(d), 1036, *with* 3 Cal. Code Regs. § 1320.4(a).  Likewise, the Inspection Act is silent as to what must or must not be included on "shipping documents," such as documents of title, shipping manifests, shipping invoices, and bills of lading that may accompany eggs or egg products in transit.  *Id.*  Nor are descriptions on shipping documents explicitly preempted by the Inspection Act.  *See* 21 U.S.C. § 1052.  Moreover, Cal. Code Regs. § 1320.4 subsections (b) and (c) do not *impose labeling requirements* at all—they merely prohibit a person from falsely promoting, including through labeling, that a product is compliant with Proposition 12 or is "cage free" if it does not comport with the Hen Enclosure Laws.  *Id.* subs. (b), (c).[6]  Thus, Regulation 1320.4 is not preempted as a matter of law because it falls outside the scope of the labeling preemption provision.

## III.  THE GOVERNOR IS NOT A PROPER PARTY TO THIS ACTION

The FAC should be dismissed in its entirety.  But if the case were allowed to proceed, the Governor should be dismissed as a party.  The Eleventh Amendment precludes suit brought against state officials.  *E.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  A State's sovereign immunity also "bars a suit against state officials when 'the state is the real, substantial party in interest.'"

---

[6] This is entirely consistent with the Inspection Act's prohibition on "false or misleading" labels.  *See* 21 U.S.C. § 1036(b); 9 C.F.R. § 590.411(f)(1).

1    *Id.* at 101 (citation omitted).  There is an "important exception to this general rule."

2    *Id.* at 102.  Under *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity does

3    not bar a suit against a state official seeking solely prospective relief and

4    contending that the state official's actions violate federal law.  *E.g.*, *Long v. Van de*

5    *Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).  But for this exception to

6    apply, "there must be a connection between the official sued and enforcement of the

7    [challenged] statute."  *Id.*  "[T]hat connection 'must be fairly direct; a generalized

8    duty to enforce state law or general supervisory power over the persons responsible

9    for enforcing the challenged provision will not subject an official to suit.'"

10   *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir.

11   2012) (citation omitted); *see also, e.g.*, *National Audubon Soc'y* Inc. v. Davis, 307

12   F.3d 835, 847 (9th Cir.), opinion amended on denial of reh'g, 312 F.3d 416 (9th

13   Cir. 2002).

14        Governor Newsom lacks the requisite connection to enforcement of the

15   California Laws to permit Plaintiff to bring suit against him under *Ex parte Young*.

16   The California Department of Food and Agriculture and the State Department of

17   Public Health are responsible for enforcing the provisions of California's hen

18   enclosure statutes.  Health & Safety Code §§ 25993.  The Governor does not play a

19   role in enforcing or implementing the statute, and any general supervisory authority

20   over the Department of Food and Agriculture or Department of Health is

21   insufficient to permit suit against him.  *E.g., Ass'n des Eleveurs de Canards et*

22   *d'Oies*, 729 F.3d at 943; *National Audubon Soc'y*, 307 F.3d at 847.  Plaintiff's

23   claims against the Governor are therefore barred by the Eleventh Amendment.

24                           **CONCLUSION**

25        The FAC should be dismissed because Plaintiff lacks standing to bring this

26   suit.  In the alternative, the FAC should be dismissed in its entirety, with prejudice,

27   because Health & Safety Code §§ 25990(b)(3)-(4), 25996 and California Code of

28   Regulations §§ 1320.1, 1320.4 are not, as a matter of law, preempted by the Egg

                                    21

1    Products Inspection Act, and no additional factual allegation would enable Plaintiff

2    to state a claim otherwise.

3

4

5    Dated:  October 6, 2025                    Respectfully submitted,

6                                               ROB BONTA
                                               Attorney General of California
7                                               ANYA M. BINSACCA
                                               Supervising Deputy Attorney General
8                                               KRISTIN A. LISKA
                                               Deputy Attorney General

9

10                                              */s/ Kristen C.A. Kido*

11                                              KRISTEN C.A. KIDO
                                               Deputy Attorney General
12                                              *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the State of California; Gavin C. Newsom, in his official capacity as Governor of California; Karen Ross, in her official capacity as Secretary of the California Department of Food & Agriculture; Erica Pan, in her official capacity as Director of the California Department of Public Health; and Rob Bonta, in his official capacity as Attorney General of California, certifies that this brief contains 6,417 words, which complies with the word limit of L.R. 11-6.1, and complies with the word limit set by order of the Court dated September 23, 2025.


Dated:  October 6, 2025                    Respectfully submitted,

                                           ROB BONTA
                                           Attorney General of California
                                           ANYA M. BINSACCA
                                           Supervising Deputy Attorney General
                                           KRISTIN A. LISKA
                                           Deputy Attorney General


                                            */s/ Kristen C.A. Kido*

                                           KRISTEN C.A. KIDO
                                           Deputy Attorney General
                                           *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Case Name:  ***United States of America v. The State of California, et al.***

Case No.:  **2:25-cv-06230-MCS-AGR**

I, Vanessa Jordan, hereby certify that on <u>October 6, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER F.R.C.P. RULE 12(B)**

- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER F.R.C.P. RULE 12(B) [with Exhibits A-B]**

- **[Proposed] Order Granting Defendants' Motion to Dismiss Complaint**

I certify that all participants in the case who are registered CM/ECF users will be served electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on <u>October 6, 2025</u>, at San Francisco, California.

| Vanessa Jordan | *Vanessa Jordan* |
|:---:|:---:|
| Declarant | Signature |