ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN LISKA (SBN 315994)
KRISTEN C.A. KIDO (SBN 335667)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6528
Fax: (916) 731-2124
E-mail: Kristen.Kido@doj.ca.gov
*Attorneys for Defendants*

*Counsel for Defendant-Intervenors on Subsequent Page*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>**v.**<br><br>**THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his Official Capacity as Governor of California; KAREN ROSS, in her Official Capacity as Secretary of the California Department of Food & Agriculture; ERICA PAN, in her Official Capacity as Director of the California Department of Public Health; and ROB BONTA, in his Official Capacity as Attorney General of California,**<br><br>Defendants. | 2:25-cv-06230-MCS-AGR<br><br>**DEFENDANTS' AND DEFENDANT-INTERVENORS' CONSOLIDATED NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>*Proposed Order Filed Concurrently*<br><br>Date: July 6, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: The Honorable Mark C. Scarsi<br>Trial Date: None Set<br>Action Filed: 7/09/2025 |
| **HUMANE WORLD FOR ANIMALS, et. al.,**<br><br>Defendant-Intervenors. | |
| **ASSOCIATION OF CALIFORNIA EGG FARMERS,**<br><br>Defendant-Intervenors. | |
| **ANIMAL WELLNESS ACTION, et al.**<br><br>Defendant-Intervenors. | |

BRIAN M. BOYNTON (SBN 222193)
brian.boynton@wilmerhale.com
THOMAS G. SAUNDERS (*pro hac vice* pending)
thomas.saunders@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6137

LEAH M. FUGERE (SBN 354757)
leah.fugere@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 S. Grand Avenue, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5300
*Attorneys for Defendant-Intervenor Association of California Egg Farmers*

JESSICA L. BLOME (SBN 314898)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
E-Mail: jblome@greenfirelaw.com
*Attorney for Defendant-Intervenors The Center for a Humane Economy and Animal Wellness Action*

BRUCE A. WAGMAN (SBN 159987)
BWagman@rshc-law.com
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8540
Fax: (415) 275-8551
*Attorneys for Defendant-Intervenors Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook*

REBECCA CARY (SBN 268519)
rcary@humaneworld.org
MELISSA ALPERT
malper@humaneworld.org
HUMANE WORLD FOR ANIMALS
1255 23rd St., NW, Suite 450
Washington, D.C. 20037
Telephone: (202) 676-2330
Fax: (202) 676-2357
*Attorneys for Defendant-Intervenor Humane World for Animals*

# TABLE OF CONTENTS

**Page**


Notice of Motion ..... 1
Memorandum of Points and Authorities ..... 3
Introduction ..... 3
Background ..... 4
I. First Amended Complaint Dismissed for Lack of Standing ..... 4
II. Second Amended Complaint Recycles the Failed Theory of *Per Se* Standing ..... 6
Legal Standard ..... 7
Argument ..... 8
I. The United States Fails, for the Second Time, To Allege a Concrete Injury ..... 8
A. The Supremacy Clause Does Not Grant the United States *Per Se* Standing ..... 9
B. Allegations Describing California's Regulatory Enforcement Mechanisms Fail to Articulate an Injury to the United States ..... 12
II. The United States' Additional Allegations Do Not Plead a Cognizable Theory of Standing ..... 15
A. This Is Not an EPIA Enforcement Suit ..... 15
B. The United States' Commerce Clause Allegations Fail to Support Subject Matter Jurisdiction ..... 17
III. Further Amendment Would Be Futile ..... 19
IV. The Sovereign Injury Theory is Contradicted By The United States' Own Past Statements (by Humane World Intervenors) ..... 20
V. This Suit is Not One to Enforce the Preemption Provision of the EPIA (by ACEF) ..... 20
Conclusion ..... 21

# TABLE OF AUTHORITIES

Page

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
458 U.S. 592 (1982) .......... 11, 12

*Altria Grp., Inc. v. Good*
555 U.S. 70 (2008) .......... 5, 9

*Arizona v. United States*
567 U.S. 387 (2012) .......... 11

*Arizona v. Yellen*
34 F.4th 841 (9th Cir. 2022) .......... 11, 12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 8, 20

*Bud Antle, Inc. v. Barbosa*
45 F.3d 1261 (9th Cir. 1994) .......... 21

*Food & Drug Admin. v. All. for Hippocratic Med.*
602 U.S. 367 (2024) .......... 9, 13, 18

*Geo Group, Inc. v. Newsom*
50 F.4th 745 (9th Cir. 2022) .......... 14

*Kumar v. Koester*
131 F.4th 746 (9th Cir. 2025) .......... 8, 16, 17

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014) .......... 7

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*
164 F.4th 710 (9th Cir. 2026) .......... 19, 20

*Murphy v. Nat'l Collegiate Athletic Ass'n*
584 U.S. 453 (2018) .......... 5, 9, 10, 12

*Nat'l Pork Producers Council v. Ross*
598 U.S. 356 (2023) .......... 7, 17

## TABLE OF AUTHORITIES (continued)

**Page**

*Pistor v. Garcia*
791 F.3d 1104 (9th Cir. 2015) .......... 7

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*
733 F.3d 1251 (9th Cir. 2013) .......... 8

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 8

*Sprewell v. Golden State Warriors*
266 F.3d 979 .......... 19

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 7, 8, 16

*United Egg Producers v. Davila*
871 F. Supp. 106 (D.P.R. 1994) .......... 21

*United States v. City of Arcata*
629 F.3d 986 (9th Cir. 2010) .......... 8, 15

*United States v. Hawaii*
--F.Supp.3d--, No. CV 25-00179 HG-WRP, 2026 WL 1021227, (D. Haw. Apr. 15, 2026) .......... 10

*United States v. Mattson*
600 F.2d 1295 (9th Cir. 1979) .......... 8

*United States v. Michigan*
Case No. 1:26-cv-00246, Dkt. 1 (W.D. Mich. Jan. 22, 2026) .......... 11

*United States v. San Jacinto Tin Co.*
125 U.S. 273 (1888) .......... 9, 13

*Upside Foods Inc v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*
171 F.4th 1239 (11th Cir. 2026) .......... 16, 21

*Warth v. Seldin*
422 U.S. 490 (1975) .......... 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Weber v. Dep't of Veterans Affairs*
521 F.3d 1061 (9th Cir.2008) ........ 19

**STATUTES**

21 U.S.C.
§ 1031*, et seq.* ........ 19
§ 1032 ........ 6, 19
§ 1033 ........ 16
§ 1037 ........ 16
§ 1050 ........ 3, 7, 15, 16, 20, 21
§ 1052(b) ........ 19

Cal. Health & Saf. Code
§§ 25990-25994.8 (Proposition 12) ........ 4
§§ 25995-25996.1 (AB 1437) ........ 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
Art. III ........ 8

**COURT RULES**

Fed. Rules Civ. Proc.
§ 12(b)(1) ........ 1, 7
§ 12(b)(6) ........ 2, 7
§ 56(a) ........ 2

**REGULATIONS**

Cal. Code Regs., tit. 3
§ 1320.4 ........ 4

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on July 6, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Mark C. Scarsi, United States District Judge, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants the State of California, Gavin C. Newsom, in his official capacity as Governor of California, Karen Ross, in her official capacity as Secretary of the California Department of Food & Agriculture, Erica Pan, in her official capacity as Director of the California Department of Public Health, and Rob Bonta, in his official capacity as Attorney General of California; Defendant-Intervenor Association of California Egg Farmers (ACEF); Defendant-Intervenors Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook; and Defendant-Intervenors The Center for a Humane Economy and Animal Wellness Action, will and hereby do move this Court to dismiss without leave to amend Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief pursuant to Federal Rule of Civil Procedure 12(b)(1).

This Motion is brought on the grounds that Plaintiff lacks standing to bring this action and that the Second Amended Complaint fails to remedy the defects of the First Amended Complaint as to subject matter jurisdiction. This Motion is based on this Notice, the Memorandum of Points and Authorities, all papers and pleadings on file in this action, and such other matters as the Court may deem appropriate. This Motion is made pursuant to the Court's orders dated March 18 and April 15, 2026 and following the conference of counsel pursuant to L.R. 7-3, which took place between April 7 and April 14, 2026. Parties were not able to reach a consensus to avoid the filing of this Motion.

This Motion is made without waiving Defendants' and Defendant-Intervenors' arguments for dismissal of the Second Amended Complaint under

Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Federal Rule of Civil Procedure 56(a). Pursuant to the Court's orders dated March 18 and April 15, 2026, should this Motion be denied, the previously filed Motions to Dismiss and Motions for Summary Judgment shall be administratively reopened for consideration. Defendants reserve the opportunity to move for additional briefing on the merits.

Dated: May 8, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN LISKA
Deputy Attorney General

*/s/ Kristen C.A. Kido*
KRISTEN C.A. KIDO
Deputy Attorney General
*Attorneys for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

A fundamental condition for seeking relief in a federal court is that the complainant has suffered an actual injury that gives rise to the case or controversy over which a federal court has jurisdiction. After two attempts, the United States still has not alleged any facts to support that it has standing to bring this suit. In its First Amended Complaint, the United States relied entirely on a novel proposition: that the federal government suffers a *per se* injury to its sovereignty any time an allegedly preempted law is on the books. This Court properly rejected that theory. This Court reasoned that because preempted laws are without effect, their existence cannot be a concrete harm to the United States. *See* Order Granting Motions to Dismiss, Mar. 18, 2026, Dkt. 77, at 6-8. And further, Defendants here cannot "violate" the preemption provision at issue because preemption provisions do not operate on the States. *See id.* Not only that, but this Court cautioned that accepting the United States' *per se* theory would open the door to "manifest" potential for abuse of the judicial system for political gain. *Id.* at 9.

And yet, in its Second Amended Complaint, the United States once again has "put all its eggs in the sovereign-injury theory of standing" basket. Dkt. 77 at 9. Accordingly, the Second Amended Complaint fails for all the reasons the Court has already explained. The Second Amended Complaint does include some "new" allegations, consisting of scattered references to (1) some of California's implementing regulations, (2) the enforcement provision of the Egg Products Inspection Act (21 U.S.C. § 1050), and (3) "interstate commerce." But none of those disjointed additions articulates a cognizable theory of standing for the United States. As an initial matter, the new allegations are all wholly conclusory, and so can be disregarded. And even if they were to be considered, they are not sufficient to establish standing. The federal government still "does not allege that it is a participant in the egg marketplace to which the subject California laws and

regulations apply." Dkt. 77 at 5. Nor does it allege any facts supporting an injury based on violation of the Egg Products Inspection Act or the dormant Commerce Clause (it does not bring a claim for relief under either).

Ultimately, the Second Amended Complaint suffers from the same fatal flaw that led this Court to dismiss the First Amended Complaint: the United States has suffered no injury in fact flowing from California's laws to give it standing. Instead, it continues to rely on "undisguised legal conclusions in search of substantiating facts," and allegations which "raise no inferences about the sovereign injury asserted[.]" Dkt. 77 at 5. The Second Amended Complaint should thus be dismissed without leave to amend.

## BACKGROUND

### I. FIRST AMENDED COMPLAINT DISMISSED FOR LACK OF STANDING

The United States filed suit against the State of California and several state officials on July 9, 2025, alleging that California's laws and regulations governing humane enclosures for egg-laying hens[1] were preempted by the federal Egg Products Inspection Act (EPIA). *See generally* Complaint, Dkt. 1; First Amended Complaint, Dkt. 47. On October 6, 2025, Defendants and Defendant-Intervenors Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook (Humane World Intervenors), and Defendant-Intervenors The Center for a Humane Economy and Animal Wellness Action (Animal Wellness Action Intervenors) moved to dismiss the First Amended Complaint in part because the challenged California provisions are not preempted by the EPIA as a matter of law.

[1] The U.S. originally alleged that AB 1437 (Cal. Health & Safety Code §§ 25995-25996.1), Proposition 12 (*id.* §§ 25990-25994.8), and section 1320.4 of California Code of Regulations title 3 were all preempted. *See* Dkt. 47 ¶¶ 53-66. Plaintiff subsequently clarified that it only meant to allege that the "Sales Ban" provisions of AB 1437 and Proposition 12 (Cal. Health & Safety Code §§ 25990(b)(3), 25996) and subsections (b) and (c) of regulation section 1320.4 were preempted. *See* Dkt. 67-1 at 6, n.1, 22-23; SAC at 10 n.7. For consistency with the Second Amended Complaint, Defendants and Defendant-Intervenors will refer to the challenged provisions collectively as the "Sales Ban."

Dkts. 58, 59, 60. Defendant-Intervenor Association of California Egg Farmers (ACEF) moved for summary judgment on the same ground. Dkt. 61. In addition, Defendants, Humane World Intervenors, and ACEF argued that the United States lacked standing to bring its preemption claim, because the United States had not alleged that it suffered any injury. *See* Dkts. 59, 60, 61.

The United States filed a cross motion for summary judgment on December 9, 2025. Dkt. 67. In response to the arguments that it lacked standing, the United States did not point to any concrete injury. Instead, it proposed a novel theory that the United States *always* has standing when it alleges that a State has enacted a preempted law. *See, e.g.,* Dkt. 67-1 at 9 ("The United States suffers sovereign harm when a state legislates in violation of federal law and the Supremacy Clause."). The Court heard argument on all pending motions on February 23, 2026. At the hearing, the United States reiterated this position. Plaintiff essentially admitted that but for the alleged preemption, the United States would be unable to articulate any concrete harm to the federal government. Transcript of Feb. 23, 2026 Hearing (Tr.) at 6 ("[I]f you disagree with us on the merits that there is no violation of the EPIA or the Supremacy Clause, I'd have a difficult time arguing that the United States has a sovereign injury theory of standing here."); *see also id.* at 17-18.

This Court rejected Plaintiff's novel approach to standing. Dkt. 77 (Order re: Motions to Dismiss and Motions for Summary Judgment (Mar. 18, 2026)). Because preempted laws are "without effect," their mere existence cannot cause the United States any injury. *Id.* at 6 (relying on *Altria Grp., Inc. v. Good,* 555 U.S. 70, 76 (2008)). Nor does the existence of an express preemption clause in the EPIA alter that analysis. *Id.* at 7-8. Indeed, such preemption clauses are not "violable by any State." *Id.* at 7-8 (relying on *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478 (2018)). Therefore, finding that the United States had "fail[ed] to allege facts supporting a cognizable theory of standing," this Court granted the

motions to dismiss the First Amended Complaint. *Id.* at 6.[2] In so doing, the Court recognized that "[r]ejecting Plaintiff's sovereign injury theory aligns with sound jurisprudence" in part because "[w]ithout requiring the United States to show some redressable injury, the federal government might initiate a campaign of preemption suits under the aegis of its sovereignty to bring state laws in line with its own political agenda." *Id.* at 9.

## II. SECOND AMENDED COMPLAINT RECYCLES THE FAILED THEORY OF *PER SE* STANDING

The United States was permitted to amend its complaint (Dkt. 77 at 10), and it did so on April 1, 2026 (SAC). Despite this Court's prior ruling that the existence of an allegedly preempted law does not cause a *per se* sovereign injury to the federal government (*see* Dkt. 77 at 6-9), the United States persists in relying on that theory in its Second Amended Complaint. *See generally* SAC. For instance, Plaintiff asserts that "[t]he United States' sovereign interests include ensuring that State laws do not interfere with federal law[.]") (SAC ¶ 10); that "the United States has a sovereign interest in vindicating Congress's policy to 'provide for the . . . uniformity of standards for eggs.' 21 U.S.C. § 1032" (*id.* ¶ 70); and that it has a sovereign interest in "create[ing] and enforce[ing] a legal code" (*id.* ¶ 69). None of these new allegations contains factual matter describing any concrete harm to the United States from the operation of the Sales Ban.

The Second Amended Complaint also adds a handful of descriptions of certain regulatory mechanisms to ensure egg distributors' compliance with the Sales Ban within California. SAC ¶¶ 54-57. But the United States does not allege any facts showing an injury to itself from the existence of those enforcement mechanisms. *Id.* Indeed, although the United States asserts that those regulations are enforced against "regulated parties" (*id.* ¶ 57), it still "does not allege that it is a participant

[2] While the Court "considered [ACEF's] standing arguments," the Court reserved judgment on ACEF's motion for summary judgment, and it did not rule on the merits of the EPIA preemption issue or address any other topic raised by the motions to dismiss. Dkt. 77 at 4.

in the egg marketplace to which the subject California laws and regulations apply." Dkt. 77 at 5. The additional allegations also include references to the EPIA's "express and exclusive cause of action for the United States" (21 U.S.C. § 1050), but the United States has not brought suit to enforce the EPIA under this provision. *Id.* ¶ 63; *see also id.* ¶¶ 9, 11, 70. Similarly, the United States invokes the Commerce Clause at various points (SAC ¶¶ 3, 71-74), but it does not actually bring a claim for relief under the dormant Commerce Clause. Indeed, the United States Supreme Court has already ruled that Proposition 12's similar regulation of pork products does not violate the dormant Commerce Clause. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023). Nor do the conclusory references to "interstate commerce" articulate any concrete harm to the United States.

The Parties met and conferred following the United States' filing of the Second Amended Complaint, but they were not able to reach a consensus to avoid filing this Motion. Accordingly, and pursuant to the Court's April 15, 2026 Order (Dkt. 85), Defendants and Defendant-Intervenors jointly move for dismissal of the Second Amended Complaint on the ground that the United States has failed to remedy the defects of the First Amended Complaint: it still alleges no facts to support a cognizable theory of standing.

## LEGAL STANDARD

Under Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint on the basis that there is no subject matter jurisdiction because the Plaintiff lacks standing. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). On such a motion, "the party invoking federal jurisdiction … bear[s] the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-431 (2021); *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Where a defendant raises a facial challenge to standing, a court resolves the motion as it would under Rule 12(b)(6). *Leite,* 749 F.3d at 1121. That is, the plaintiff must allege each element of standing with "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a court must "accept as true all well-pleaded allegations of material fact," it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

## ARGUMENT

### I. THE UNITED STATES FAILS, FOR THE SECOND TIME, TO ALLEGE A CONCRETE INJURY

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim[.]" *Kumar v. Koester,* 131 F.4th 746, 751 (9th Cir. 2025) (quoting *TransUnion LLC*, 594 U.S. at 431). To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted). For an injury to be particularized, the plaintiff must show that the challenged conduct "affect[s] the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Standing is "'substantially more difficult to establish'" when the plaintiff is not the "subject of the challenged government action." *United States v. City of Arcata,* 629 F.3d 986, 989 (9th Cir. 2010) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 562 (1992)).

These standing requirements apply equally to the federal government, just as they apply to private or other government plaintiffs. *See United States v. Mattson*,

600 F.2d 1295, 1300 (9th Cir. 1979) ("[T]he government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter.") (quoting *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888)); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378-79 (2024) ("As this Court explained to President George Washington in 1793 in response to his request for a legal opinion, federal courts do not issue advisory opinions about the law—even when requested by the President."); *see also* Dkt. 77 at 5. In the Second Amended Complaint, the United States still identifies no injury in fact to the federal government to support its standing. The limited new allegations consist primarily of legal conclusions and repetitions of the United States' already-rejected theories of *per se* standing. *See* SAC ¶¶ 10-11, 63-65, 69-71. And as explained further below, the allegations the United States has added describing California's regulatory enforcement mechanisms targeting "regulated parties" do not identify any injury to the federal government. *See id.* ¶¶ 54-57; *infra* Section I.B. Thus, the United States has once again failed to allege any "facts raising an inference that California's laws and regulations diminish the sovereignty of the federal government." Dkt. 77 at 6-7.

### A. The Supremacy Clause Does Not Grant the United States *Per Se* Standing

In the First Amended Complaint, the United States relied exclusively on a theory of sovereign injury arising from the mere existence of allegedly preempted laws to assert its standing. *See, e.g.,* First Amended Complaint ¶¶ 59, 63, 66. This Court has already held that "the Supremacy Clause does not itself conjure a substantive right that Congress or the United States may vindicate through suit." Dkt. 77 at 8. This is in part because the Supremacy Clause is a "rule of decision," not a source of federal rights. *Nat'l Collegiate Athletic Ass'n*, 584 U.S. at 477. Indeed, because a preempted law is "without effect," its mere existence cannot, as a matter of law, cause an injury. *See* Dkt. 77 at 6-7 (relying on *Altria Grp.*, 555 U.S.

at 76 (internal quotation marks omitted)). As this Court explained: "From this principle flows the proposition that, if Plaintiff's preemption theory is correct, the existence of California's laws and regulations governing egg sales and distribution in and of themselves do not harm Plaintiff because they are illusory." Dkt. 77 at 6-7. Moreover, Defendants cannot violate express preemption clauses. *See id.* (relying on *Nat'l Collegiate Athletic Ass'n,* 584 U.S. at 478 (express preemption provisions do not "operate directly on the States[,]" but rather "regulate[] private actors."); *see also* Tr. at 13-14 (United States agreeing that it "doesn't have the ability to demand that states strike down laws that the United States feels are inconsistent with its own laws," as a principle "consistent with commandeering doctrines and notions.").

And yet, in the SAC, the United States recycles its previously rejected theory of *per se* sovereign injury. Specifically, Plaintiff alleges that "[c]onduct that impairs the United States' ability to exercise its sovereign prerogatives, intangible as those prerogatives may be, gives rise to a cognizable injury in fact," and further alleges that those prerogatives include "ensuring that State laws do not interfere with federal law[.]" SAC ¶ 10 (internal citations omitted). Likewise, the United States asserts that it "has a sovereign interest in vindicating Congress's policy to 'provide for the . . . uniformity of standards for eggs" (*id.* ¶ 70), as well as in "create[ing] and enforce[ing] a legal code" (*id.* ¶ 69). These "new" allegations of sovereign injury mimic the conclusory allegations already dismissed by this Court, and they fail to articulate a cognizable theory of standing for the same reasons. *See* Dkt. 77 at 6-8; *see also United States v. Hawaii*, -- F.Supp.3d --, No. CV 25-00179 HG-WRP, 2026 WL 1021227, at *6 (D. Haw. Apr. 15, 2026) (holding the United States lacked Article III standing where the complaint relied on "a legal conclusion that the United States' 'sovereignty' will be injured if the State of Hawaii sues third

parties in state court. The Complaint hypothesizes that any state law tort claim would be preempted by federal law.").[3]

The cases the United States relies on in the SAC to support this theory are inapposite. *See, e.g.,* SAC ¶¶ 10, 69 (citing *Arizona v. United States*, 567 U.S. 387 (2012); *Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022); and *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982)). As movants have already explained, standing was not litigated in *Arizona v. United States*, and, in any event, the United States *did* allege an injury in fact to the federal government arising from the enforcement of a state law in that case. *See* Complaint filed in *United States v. Arizona*, ¶ 4, No. 10-01413, 2010 WL 2653363 (D. Ariz. July, 6, 2010) (state law "impose[d] significant … burdens on the federal agencies charged with enforcing the national immigration scheme."); *see also* Dkt. 71 at 2-3, Dkt. 72 at 22, Dkt. 73 at 5. Nor does *Arizona v. Yellen* support Plaintiff's theory. That case addressed a *State's* standing to challenge the *federal government* in the face of threatened enforcement by federal officials. *Yellen*, 34 F.4th 841. *Yellen* recognized that a government plaintiff, like a private plaintiff, must still allege "*sufficiently concrete and particularized harms* to its ability to exercise its sovereign prerogatives[.]" *Id.* at 852 (emphasis added). The Ninth Circuit concluded that Arizona had done precisely that: it alleged facts sufficient to demonstrate that "it [would] face serious consequences in losing control over its taxing policies and being held to a funding offer that it does not understand." *Id.* at 853; *see also* Complaint filed in *Arizona v. Yellen*, ¶ 45, No. 21-00514, 2021 WL 1151079 (D. Ariz. March 25, 2021) (alleging loss of sovereign prerogative to adjust State tax rate and engage in "macroeconomic stimulus" during pandemic). And Arizona had also "alleged a sufficiently credible

[3] As this Court has also explained, advancing federal policy interests is not a sufficient basis for standing; if it were, "the federal government might initiate a campaign of preemption suits under the aegis of its sovereignty to bring state laws in line with its own political agenda." Dkt. 77 at 9. The concern is justified. *See, e.g., United States v. Michigan*, Case No. 1:26-cv-00246, Dkt. 1 (W.D. Mich. Jan. 22, 2026) (near identical challenge to Michigan's parallel law regulating eggs).

threat of enforcement" to sustain standing, independent of any theory of sovereign injury. *Yellen*, 34 F.4th at 851. Thus, the allegations of harm in *Yellen* were "sufficiently concrete and particularized" to support a cognizable theory of standing. *Id.* at 852. No such allegations have been made here.

Finally, *Alfred L. Snapp & Son* also provides no support for the United States' theory of sovereign injury based on preemption. As with *Yellen, Alfred L. Snapp & Son* is not a preemption case, but rather a case about whether Puerto Rico had *parens patriae* standing to assert that apple growers violated certain federal labor laws and thereby harmed Puerto Rican workers. *Alfred L. Snapp & Son*, 458 U.S. at 599. But the United States has never asserted a *parens patrie* theory of standing here, making that case inapposite. Nor can the United States rely on the decision's statement, in dicta, that sovereign interests include "enforc[ing] a legal code" and having that code recognized by other sovereigns.[4] *Id.* at 601; *see* SAC ¶ 69. As explained below (*infra,* Section II.A), the United States has not brought this case to "enforce" the EPIA. Nor could it, since States do not "violate" express preemption provisions even if they enact laws that are preempted. *See Nat'l Collegiate Athletic Ass'n,* 584 U.S. at 478. Thus, the United States has not alleged a sovereign injury of the kind recognized by the Court in *Alfred L. Snapp & Son*. *Alfred L. Snapp & Son*, 458 U.S. at 601. The case has little, if any, value here.

In sum, the Second Amended Complaint provides no basis to revisit this Court's prior ruling that the United States must allege facts showing concrete harm and cannot rely on a *per se* theory of sovereign injury for standing.

### B. Allegations Describing California's Regulatory Enforcement Mechanisms Fail to Articulate an Injury to the United States

This Court held that the "existence of California's laws and regulations governing egg sales … in and of themselves do not harm" the United States. Dkt.

[4] As ACEF has explained, the sovereign interest in recognition by other sovereigns is not implicated here as it characteristically "involves the maintenance and recognition of borders." *See* Dkt. 71 at 3, n.3.

77 at 6. But this Court also suggested it was possible that "California's *enforcement* of" those laws "could give rise to an injury in fact by impeding the operations or functions of the federal government." *Id.* at 7. The Second Amended Complaint does include allegations describing some enforcement mechanisms California has adopted to monitor and ensure compliance with the Sales Ban. *See* SAC ¶¶ 54-57. But these new allegations do not establish that the federal government suffers a concrete injury—"sovereign" or otherwise—by the enforcement of the Sales Ban.

In total, the allegations assert that "[a]n out-of-state egg distributor must apply for and obtain a registration from the [California Department of Food and Agriculture]," which maintains a list of registered distributors (SAC ¶¶ 54-55), and that the same agency invites the public to report violations of AB 1437 and Proposition 12 (*id.* ¶ 56). Nowhere does the United States "allege it is a participant in the egg marketplace," nor that enforcement of the Sales Ban "imped[es] the operations or functions of the federal government." *See* Dkt. 77 at 5. Indeed, the United States actually asserts that it is "regulated parties" who may be injured by enforcement (SAC ¶ 57, *see also id.* ¶¶ 54-55, describing requirements for egg distributors), but never names itself among them. *See All. for Hippocratic Med.*, 602 U.S. at 379 ("plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute."); *San Jacinto Tin Co.,* 125 U.S. at 286 (federal government does not have standing to bring suit for the benefit of a third party, where "there does not appear any obligation on the part of the United States to the public, or to any individual, or any interest of its own.").

Far from identifying a federal function impeded by enforcement of the Sales Ban, the United States merely adds the word "enforcement" to its assertions that it is suffering a *per se* sovereign injury. *See* SAC ¶ 69 (alleging the United States "has standing to assert this claim to protect its sovereign interests" because "California's *enforcement*, and threatened future *enforcement*, of the Sales Ban

impairs the United States' sovereign interest in creating and enforcing a legal code, as well as in having that code recognized by other sovereigns.") (emphasis added, cleaned up); *id.* ¶ 70 (alleging the United States "has a sovereign interest in vindicating Congress's policy to 'provide for the . . . uniformity of standards for eggs' [and so] California's enactment *and enforcement* of the Sales Ban . . . directly undermines the federal government's codified interest in nationally uniform egg standards.") (emphasis added). Despite the Court's guidance, the United States has failed to allege any facts showing the enforcement mechanisms' impact on the operations of the federal government.

*Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) provides a useful comparison to the United States' failure here to allege any concrete injury arising from enforcement of California's laws. There, the United States alleged a concrete harm based on California's laws prohibiting private persons from operating detention facilities within the State. *Id.* At the time *Geo Group* was decided, Immigration and Customs Enforcement (ICE) relied almost entirely on privately owned and operated detention facilities in California to carry out federal immigration operations. *Id.* at 752. Therefore, enforcement of the California law would require "ICE to entirely transform its approach to detention in the state or else abandon its California facilities," causing "profound disruptions to [ICE's] California operations." *Id.* at 750, 753. That concrete injury to the operations of the federal government was sufficient to establish the United States' standing. *Id.* at 753. In contrast, mere descriptions of enforcement mechanisms that apply to "regulated parties" not before the Court are insufficient. *Cf.* Complaint filed in *United States v. Arizona* ¶ 4, No. 10-01413, 2010 WL 2653363 (D. Ariz. July, 6, 2010) (alleging enforcement of state laws penalizing unlawfully present noncitizens "impose[d] significant … burdens on the federal agencies charged with enforcing the national immigration scheme."); *see also* Complaint filed in *United States v. Alabama* ¶ 49, No. 11-02746, 2011 WL 3252582 (N.D. Ala. Aug. 1, 2011)

(alleging enforcement of state laws required federal government to "divert resources from its own, carefully considered enforcement primary priorities … to address the work that Alabama will now create for it"); *City of Arcata,* 629 F.3d at 990 (challenged ordinances "require[d] federal recruiters to alter their conduct or face civil penalties").

In sum, the new allegations describing California's regulatory enforcement mechanisms do not articulate an injury in fact to the United States. With no injury in fact, there is also no causation or redressability. Accordingly, the United States has failed to allege a cognizable theory of standing to assert its preemption claim.

## II. The United States' Additional Allegations Do Not Plead a Cognizable Theory of Standing

The Second Amended Complaint's remaining additional allegations likewise fail to remedy the fatal flaw in the First Amended Complaint: they identify no actual alleged harm to the United States. Moreover, despite this Court's admonition against relying on "undisguised legal conclusions" (Dkt. 77 at 5), the rest of the new allegations are legal rather than factual. The United States invokes the EPIA's cause of action (SAC ¶¶ 9, 11, 63) and adds a handful of references to the Commerce Clause (*id.* ¶¶ 10, 71-73), but none of these additions raises an inference that the United States has suffered any injury caused by the Sales Ban, let alone one that gives it standing to bring its preemption claim.

### A. This Is Not an EPIA Enforcement Suit

As this Court has held, the United States does not have standing under the Supremacy Clause based on the express preemption clause of the EPIA. *See supra* Section I.A; Dkt. 77 at 7-8. The United States now seeks to bolster its claim of standing under the EPIA by citation to Section 1050, which grants a cause of action to the United States to enforce the EPIA's substantive provisions. *See* SAC ¶¶ 9, 11, 63 (citing 21 U.S.C. § 1050). That section provides in relevant part: "All proceedings for the enforcement or to restrain violations of this chapter shall be by

and in the name of the United States." 21 U.S.C. § 1050. But an express cause of action to enforce the EPIA is meaningless *where there is no non-conclusory allegation that the EPIA has been violated*. This is not a suit to enforce the requirements of the EPIA, and so Section 1050 does not provide the United States with standing in this case.

Acts that are prohibited under the EPIA are enumerated in Section 1037. *See* 21 U.S.C. § 1037. They include acts like transacting in poisonous or rotten eggs unfit for human consumption (21 U.S.C. § 1037(a), (b)(4), (d); *see id.* § 1033(a), (g)); keeping unsanitary facilities (*id.* § 1037(c)); and failing to store eggs at a temperature of no more than 45 degrees Fahrenheit (*id.* § 1037(c)). These prohibitions apply to operators of an official plant, egg handlers, and "persons" as defined in the EPIA. *See id.* §§ 1037, 1033 (definitions). The United States does not allege that Defendants have engaged in any of the activities prohibited by the EPIA. *See* SAC. Nor could the *State* violate those substantive provisions by enacting state law.[5] *See, e.g., Upside Foods Inc v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 171 F.4th 1239, 1252 (11th Cir. 2026) (explaining that Poultry Products Inspection Act, which contains similar enforcement provision, "regulates poultry processors, not state actors."). Indeed, the United States does not even bring a claim for relief under the EPIA. *See* SAC at 15-17 (Claims for Relief); *see also Kumar,* 131 F.4th at 751 ("[P]laintiffs must demonstrate standing for each claim[.]") (quoting *TransUnion LLC*, 594 U.S. at 431). Thus, the United States' reliance on the enforcement provision in Section 1050 as a basis for its standing is wholly misplaced, particularly in the absence of non-conclusory allegations that the EPIA has been violated, and as to these Defendants.

---

[5] And, as Defendants and Defendant-Intervenors have explained elsewhere, nor do the challenged laws themselves touch upon any of acts prohibited or mandated by the EPIA. *See* Dkts. 58-61.

**B. The United States' Commerce Clause Allegations Fail to Support Subject Matter Jurisdiction**

The United States also alleges that "California's enactment and enforcement of the Sales Ban inflict a sovereign injury on the United States by usurping exclusive federal authority . . . to regulate interstate . . . commerce." SAC ¶ 71 (internal quotations omitted). It further alleges that "California's enforcement of the Sales Ban burdens interstate commerce by increasing the regulatory burden on non-California egg producers and distributors." *Id.* ¶ 74. But the United States' conclusory invocations of the Commerce Clause still do not raise a reasonable inference that the United States has been harmed by the Sales Ban.

As a threshold matter, the United States does not bring a claim under the dormant Commerce Clause. And for good reason: the Supreme Court has already held that Proposition 12's comparable regulation of pork products does *not* violate the dormant Commerce Clause. *Nat'l Pork Producers Council*, 598 U.S. 256. Under the logic of *National Pork Producers*, the United States would be strained to argue that the Sales Ban "usurps exclusive federal authority" to regulate interstate commerce. Indeed, "[i]n our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior." *Id.* at 374. Accordingly, in holding that the pork requirements of Proposition 12 did not violate the dormant Commerce Clause, the Supreme Court rejected the theory that a law with out-of-State impacts must be unconstitutional. *Id.* at 375 ("Petitioners' 'almost per se' rule against laws that have the 'practical effect' of 'controlling' extraterritorial commerce would cast a shadow over laws long understood to represent valid exercises of the States' constitutionally reserved powers."). And, Plaintiff cannot transform its implausible injury under the Commerce Clause into an injury to support a preemption claim. *See Kumar,* 131 F.4th at 752-56 (analyzing different injuries to support each claim brought); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding . . . often turns on the

nature and source of the claim asserted."). Thus, the United States' conclusory allegations that the Sales Ban inflicts a sovereign injury based on "usurping" its authority over interstate commerce or "increasing the regulatory burden" outside California miss the mark.

Moreover, even if there were facts alleged to support an inference that the Sales Ban impermissibly burdens interstate commerce (there are none), that still would not be sufficient to show that it inflicts a concrete harm *on the United States*. Indeed, Plaintiff alleges that the regulatory burden, if any, falls on "non-California egg producers and distributors." SAC ¶ 74. It has failed to articulate how that purported regulatory burden on third parties obstructs the United States' sovereign authority under the Commerce Clause. *See All. for Hippocratic Med.*, 602 U.S. at 379 ("plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute."). The United States has already acknowledged as much:

> [E]gg producers who wish to sell eggs into California and are unwilling to comply with California's Egg Laws with respect to those eggs are free to sue the appropriate California officials for injunctive relief, asserting the same preemption and Commerce Clause claims raised in plaintiffs' complaint. Indeed, they would be the most natural plaintiffs, because they would be directly affected by those laws.

Dkt. 60-1, RJN Ex. A (Brief of United States as *Amicus Curiae* at 16-17, *Missouri v. California*, 586 U.S. 1065 (2019) (No. 22O148)).

Finally, the United States appears to allege an injury based on a conflict between the Sales Ban and Congress' purported purposes in passing the EPIA: to "promote free and unhindered commerce in the interstate market for eggs and egg products." SAC ¶ 72. But again, the United States does not point to any concrete injury to the United States flowing from the California provisions at issue. It seeks instead to rely on a *per se* legal theory of harm to asserted U.S. policy. In any

event, the assertion that the EPIA was meant to promote "unhindered commerce" is plainly false.

Indeed, the entirety of the EPIA imposes restrictions on the commercial sale of eggs and egg products. *See* 21 U.S.C. 1031 *et seq*. Congress' stated intention in passing the EPIA was "to *prevent* the movement or sale for human food, of eggs and egg products which are adulterated or misbranded[.]" 21 U.S.C. § 1032 (emphasis added). Congress also expressly reserved the States' authority to regulate eggs and egg products so long as those regulations did not conflict with the EPIA. *See* 21 U.S.C. § 1052(b). Thus, the EPIA's imposition of numerous restrictions on the interstate market for eggs and egg products directly contradict any assertion that the law was intended to render interstate commerce in eggs and egg products "free and unhindered." *See Weber v. Dep't of Veterans Affairs,* 521 F.3d 1061, 1065 (9th Cir.2008) (A complaint is properly dismissed if it fails to "plead 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly,* 550 U.S. at 570); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Accordingly, any assertion of harm to the United States' on the basis of a *per se* policy interference is entirely unfounded. The United States' conclusory references to "interstate commerce" fail to raise a reasonable inference that the United States has suffered a concrete injury by the existence or enforcement of the Sales Ban.

## III. Further Amendment Would Be Futile

"A district court may deny leave to amend in its discretion when amendment would be futile." *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 738 (9th Cir. 2026). Here, this Court's prior decision provided clear guidance to Plaintiff on the defects of its First Amended Complaint. *See generally* Dkt. 77. And Plaintiff failed to remedy those defects. Its Second Amended Complaint relies

on the same theories this Court has already rejected, or it relies on unsupported legal conclusions. In these circumstances, leave to amend is properly denied. *See Malheur Forest Fairness Coal.*, 164 F.4th at 738 (leave to amend properly denied where Plaintiff failed to remedy defects after three complaints and with guidance from court).

## IV. THE SOVEREIGN INJURY THEORY IS CONTRADICTED BY THE UNITED STATES' OWN PAST STATEMENTS (BY HUMANE WORLD INTERVENORS)

The Humane World Intervenors assert that the United States' claim of injury should also be rejected by the Court as implausibly stated. As this Court already previewed in questioning, the United States' position in *Missouri v. California* (Dkt. 60-1, RJN Ex. A) is relevant to the standing analysis here. *See* Tr. at 5 ("[H]ow does the prior stance the United States took in the prior case that was before the Supreme Court – how does that play into whether or not there's been an injury here?"). If the Sales Ban injures federal sovereignty, then the United States would not have taken the position that that AB 1437's sales ban was not preempted by the EPIA. *See* Dkt. 60-1, RJN Ex. A at 7, 18-20. The United States' adoption of the opposite position here, offered with zero explanation for the change, renders its claim of injury in fact implausible. *See Iqbal*, 556 U.S. at 664 ("the reviewing court [will] draw on its experience and common sense" to assess plausibility).

Moreover, AB 1437 was passed in 2010, eight years before the United States proffered its Solicitor General Brief and fifteen years before this suit was filed. If this law (or the materially-identical Proposition 12) truly injures federal sovereignty, surely the United States would have sought to invalidate it earlier.

## V. THIS SUIT IS NOT ONE TO ENFORCE THE PREEMPTION PROVISION OF THE EPIA (BY ACEF)

To the extent the United States is arguing that a suit asserting the preemption clause of the EPIA is an enforcement suit under the EPIA's Section 1050, that position is inconsistent with the longstanding principle that private parties may seek to enjoin enforcement of a preempted law. The federal government's EPIA

enforcement authority under Section 1050 is exclusive. *See* 21 U.S.C. § 1050 ("All proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States."). Accordingly, if an affirmative preemption suit such as this one were a "proceeding[] for the enforcement or to restrain violations of" the EPIA, *id.*, then private parties could not exercise their well-established authority to initiate preemption suits of their own. *Upside Foods*, 171 F.4th at 1252*; see also Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994) ("[e]ven in the absence of an explicit statutory provision establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief against state action on the basis of federal preemption."); *United Egg Producers v. Davila*, 871 F. Supp. 106 (D.P.R. 1994), *aff'd sub nom. United Egg Producers v. Dep't of Agric. of Com. of Puerto Rico*, 77 F.3d 567 (1st Cir. 1996) (private preemption suit). This would be an impermissible interpretation of Section 1050.

## CONCLUSION

The Second Amended Complaint should be dismissed without leave to amend.

Dated: May 8, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN LISKA
Deputy Attorney General

*/c/ Kristen C.A. Kido*

KRISTEN C.A. KIDO
Deputy Attorney General
*Attorneys for Defendants*

*Signatures continued on subsequent page*

THOMAS G. SAUNDERS (*pro hac vice* pending)
LEAH M. FUGERE
WILMER CUTLER PICKERING HALE AND DORR LLP
350 S. Grand Avenue, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5300

*/s/ Bryan M. Boynton*

BRIAN M. BOYNTON
*Attorneys for Defendant-Intervenor Association of California Egg Farmers*

GREENFIRE LAW, PC

*/s/ Jessica L. Blome*

JESSICA L. BLOME
*Attorneys for Defendant-Intervenors The Center for a Humane Economy and Animal Wellness Action*

RILEY SAFER HOLMES & CANCILA LLP

*/s/ Bruce A. Wagman*

BRUCE A. WAGMAN
*Attorneys for Defendant-Intervenors Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook*

**SIGNATURE ATTESTATION**

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer, counsel of record for Defendants, hereby attests that all signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 8, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Kristen C.A. Kido*
KRISTEN C.A. KIDO
Deputy Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,469 words, which complies with the word limit set by court order dated April 15, 2026.

Dated: May 8, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Kristen C.A. Kido*

KRISTEN C.A. KIDO
Deputy Attorney General
*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

Case Name: **United States of America v. The State of California, et al.** No. **2:25-cv-06230-MCS-AGR**

I hereby certify that on May 8, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS AND DEFENDANT-INTERVENORS' CONSOLIDATED NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on May 8, 2026, at Los Angeles, California.

| Janice Park | */s/ Janice Park* |
|---|---|
| Declarant | Signature |

SA2025304045
68444305