**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 2:25-cv-06230-MCS-CTS<br><br>**ORDER DENYING MOTION TO DISMISS, CERTIFYING ORDER FOR INTERLOCUTORY APPEAL, AND STAYING ACTION (ECF NOS. 87, 89)** |

## I. INTRODUCTION

In this preemption suit, the Court dismissed the amended complaint on the basis that Plaintiff United States of America did not plead enough facts to support its constitutional standing. (Order 10, ECF No. 77.) Plaintiff filed a second amended complaint. (SAC, ECF No. 78.) Defendants—the State of California; Gavin C. Newsom, in his official capacity as Governor of California; Karen Ross, in her official capacity as Secretary of the California Department of Food and Agriculture; Erica Pan, in her official capacity as Director of the California Department of Public Health; and Rob Bonta, in his official capacity as Attorney General of California—and Defendant-Intervenors—Humane World for Animals; Animal Legal Defense Fund; Animal Equality; The Humane League; Farm Sanctuary; Compassion in World Farming, Inc.; Animal Outlook; Association of California Egg Farmers; Animal Wellness Action; and Center for a Humane Economy—filed a motion to dismiss. (Mot., ECF No. 89.)[1] The motion is fully briefed. (Opp'n, ECF No. 90; Reply, ECF No. 91.) The Court heard oral argument on July 6, 2026. (Mins., ECF No. 97.)

## II. BACKGROUND

The Court incorporates by reference its summary of the dispute from its order dismissing the amended complaint. (Order 3.) In brief, Plaintiff contends that the federal Egg Products Inspection Act ("EPIA") preempts certain California statutory provisions, and regulations promulgated thereunder, that prohibit the sale of eggs laid by hens confined under certain "cruel" conditions, which Plaintiff refers to as a "Sales Ban."[2] (SAC ¶ 47 n.7; *see generally id.* ¶¶ 20–57.) Plaintiff seeks a declaration that the EPIA

---

[1] The originally filed version of the motion contained non-substantive errors. (Notice of Errata, ECF No. 88.) The Court refers to the corrected motion in this Order and directs the Clerk to terminate the original motion.

[2] For ease of reference only, the Court uses Plaintiff's term in this Order.

preempts the Sales Ban, and an injunction precluding California from enforcing the Sales Ban. (*Id.*, Prayer for Relief.)

According to its operative pleading, Plaintiff has constitutional standing to pursue this action "to vindicate its sovereign interests," which "include ensuring that State laws do not interfere with federal law, or with the federal government's exclusive authority over interstate commerce." (SAC ¶ 10.) In enacting the EPIA, which preempts state laws that add to or differ from federal standards, Congress intended to mandate nationally uniform egg standards. (*Id.* ¶¶ 62–65.) In furtherance of this intent, Congress enabled the Secretary of Agriculture to promulgate federal standards for shell eggs as well as the labeling and packaging of egg products, which authority the Department of Agriculture exercised. (*Id.* ¶¶ 24, 27, 64, 80.) California's enforcement of the Sales Ban, which departs from those federal standards, thus usurps the federal government's exclusive authority over interstate commerce and derivative interest in nationally uniform egg standards. (*Id.* ¶ 73; *see id.* ¶¶ 69–73.)

## III. MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert its claims. *Id.* at 1122.

When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, a court must assume the factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). In

other words, the complaint must clearly allege each element of standing with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020).

**B. Discussion**

The parties dispute whether Plaintiff's new pleading satisfies one of the foundational elements of constitutional standing: injury in fact. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025).[3] In dismissing the previous version of the complaint, the Court reasoned that Plaintiff had not pleaded a standing theory resting on an injury to its sovereignty, and that the theory it proffered in its brief was incognizable. (Order at 5–9.) Citing *United States v. King County*, 122 F.4th 740, 751 (9th Cir. 2024), and *United States v. Mattson*, 600 F.2d 1295, 1298–99 (9th Cir. 1979), the Court left open the possibility that California's enforcement of the Sales Ban "could give rise to an injury in fact by impeding the operations or functions of the federal government." (Order 7.)

Plaintiff pleads additional facts in its second amended complaint raising an inference that California's enforcement of the Sales Ban frustrates the operations of the federal government by undermining federal regulations that vindicate the congressional interest in nationally uniform egg standards. (SAC ¶¶ 64–65, 70–73.) Plaintiff's allegations of fact and the framework of federal law are closely entangled on this issue. As Plaintiff's counsel argued at the hearing, the Court must accept the statutory statement of congressional intent in enacting the EPIA as Plaintiff construes it for the purposes of the standing analysis. (*See* Tr. 11–12, ECF No. 100); *see also* 21 U.S.C. § 1031 ("[R]egulation by the Secretary of Agriculture and the Secretary of Health and

---

[3] The Court incorporates by reference its recitation of the standards governing constitutional standing from its prior order. (Order 5.)

Human Services, and cooperation by the States and other jurisdictions, . . . are appropriate to prevent and eliminate burdens upon [interstate or foreign] commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers."); *id.* § 1032 ("It is hereby declared to be the policy of the Congress to provide for . . . uniformity of standards for eggs . . . ."). So considered, Plaintiff raises a plausible inference that the Sales Ban undermines the regulatory scheme designed to fulfill that intent. And that, in turn, raises a plausible inference that the Sales Ban interferes with Department of Agriculture operations to enforce those regulations or otherwise to engage with the market for eggs in exercise of its regulatory power. *See, e.g.*, 7 C.F.R. § 57.10 ("The Administrator [of the Agricultural Marketing Service] shall perform . . . such duties as the Secretary [of Agriculture] may require in the enforcement or administration of the provisions of the [EPIA] and the regulations in this part.").

On the pleadings, these inferences sufficiently support Plaintiff's standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (recognizing a sovereign may assert an injury to a sovereign interest, such as its "exercise of sovereign power," including "the power to create and enforce a legal code"); *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022) (noting a sovereign may "allege[] sufficiently concrete and particularized harms to its ability to exercise its sovereign prerogatives, intangible as those prerogatives may be"); *Mattson*, 600 F.2d at 1298 (noting sovereign suits brought "to relieve a burden on interstate commerce caused by the violation of some congressional enactment"). *King County* is instructive. There, a circuit panel concluded that the United States had constitutional standing to challenge a county order restricting fixed base operators at an airport from servicing Immigration and Customs Enforcement charter flights. 122 F.4th at 750–52. The panel reasoned that the county order prevented the agency from accessing services at the airport, effectively precluding the agency from chartering flights there and increasing operational costs to the United States. *Id.* at 750. The United States also faced a "substantial risk" that the

county would formally prohibit servicing of federal charter flights in its implementation of the order. *Id.* at 751. There, as here, nonfederal government action allegedly interfered with the operations of a federal executive agency, providing the United States a cognizable constitutional injury to challenge that action.

Granted, the interference alleged here is more sparsely pleaded than what the United States asserted in *King County*. Notably, unlike in that case, here Plaintiff is not the target of the nonfederal government action, so "standing is . . . substantially more difficult to establish." *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010) (internal quotation marks omitted). The injury recognized here relies on an inference that the Department of Agriculture is exercising the authority Congress gave it to implement the EPIA in the market for eggs, which flows from its promulgation of egg product standards. (*See* SAC ¶¶ 64, 80.) Specific allegations toward the depletion of resources the Sales Ban causes the Agricultural Marketing Service, Department of Agriculture inspectors, or some other executive agency or actor are notably absent. But the complaint supports an inference that the Department of Agriculture not only has exercised its authority to promulgate regulations, but also is exercising its authority to enforce or administer those regulations. (*E.g.*, SAC ¶¶ 64, 71–73.) And, accepting Plaintiff's legal theory as valid for the purposes of the standing analysis, *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 298 (2022), California's enforcement of the Sales Ban plausibly encroaches on the exercise of that authority. (*See* SAC ¶¶ 51–58, 63–65, 69–73). This is enough to survive a facial challenge to Plaintiff's pleading. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . .").

The motion is denied.

///

## IV. CERTIFICATION

### A. Legal Standard

Generally, appellate review of district court rulings must wait until after a final judgment. 28 U.S.C. § 1291 (conferring "jurisdiction of appeals from all final decisions of the district courts"); *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 747 (9th Cir. 2008) ("A district court order is . . . not appealable unless it disposes of all claims as to all parties or unless judgment is entered in compliance with Federal Rule of Civil Procedure 54(b)."). However, a district judge who issues "an order not otherwise appealable" may certify the order for appeal if the judge is "of the opinion that such order [(1)] involves a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

"Although . . . an interlocutory appeal does not automatically stay proceedings in the district court, the district court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'" *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008) (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)). "In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

///

**B. Discussion**

The Court certifies this Order for interlocutory appeal because the threshold question of Plaintiff's standing is a challenging one likely to drive further proceedings in the case. Constitutional standing is a jurisdictional issue that generally must be resolved before any adjudication of the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Whether Plaintiff alleges a cognizable theory of standing is a dispositive legal question suitable for disposition in the Court of Appeals before proceedings continue in this Court. *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

There is substantial ground for difference of opinion on the standing question. Counsel on both sides recognized that Plaintiff's theory of constitutional standing in this matter is atypical or unprecedented. (Tr. 14, 18.) The Court of Appeals might conclude that the Court overstretched inferences that reasonably can be extracted from Plaintiff's pleading of the Department of Agriculture's exercise of regulatory authority. Or the appellate court may endorse a different theory of standing Plaintiff offers. (*E.g.*, Opp'n 4–5 (arguing a violation of federal law inflicts an injury to federal sovereignty); *id.* at 7 (contending Congress's authorization of EPIA enforcement actions supports standing)); *see Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) ("[T]he appellate court may address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court."). Review is likely to provide clarity on abstruse sovereign standing issues on which reasonable jurists could disagree. *See Couch*, 611 F.3d at 633 ("[A] substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented." (internal quotation marks omitted)).

Finally, an immediate appeal is likely to materially advance the termination of the litigation. Although the parties suggested at a prior hearing that they do not need to

take merits discovery in this action, (*see* Order 11 (memorializing discussion)), Defendants and Defendant-Intervenors should be given an opportunity to explore the standing theory credited here through jurisdictional discovery. At the most recent hearing, Defendants' counsel stated that Defendant intended to take discovery into "the factual matters of the interference with federal operations." (Tr. 22.) And counsel for Defendant-Intervenor Association of California Egg Farmers speculated that Department of Agriculture inspectors' testimony regarding their application of federal grading standards might support Plaintiff's theory of standing. (*Id.* at 31–32.) The parties should gather additional information about the impact of the Sales Ban on executive enforcement and administration of the EPIA, especially given the paucity of pleaded facts relevant to the issue. If this Order is reversed on appeal, the parties may avoid expending significant time and resources toward discovery on this theory of standing. Alternatively, the parties may be able to avoid discovery if the Court of Appeals credits a different standing theory. Accordingly, resolution of the threshold standing question on appeal "may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (internal quotation marks omitted).

For similar reasons, the Court exercises its discretion to stay proceedings pending the anticipated interlocutory appeal. The circuit court ultimately could render a decision that would make jurisdictional discovery unnecessary. Proceeding immediately to the jurisdictional discovery phase while an interlocutory appeal is pending may waste substantial court and party resources.

///

## V. CONCLUSION

The Court denies the motion to dismiss and certifies this Order for interlocutory appeal. The Court stays the action until the expiration of Defendants' deadline to appeal this Order or the conclusion of any appeal of this Order, whichever is later. For case administration purposes only, the Court directs the Clerk to remove the action from the Court's active caseload until further application by the parties or order of this Court. The parties shall file a joint status report within 120 days, and a further report every 120 days thereafter. Each report must state on the cover page the date the next report is due. Additionally, the parties must notify the Court within seven days of the expiration of Defendants' deadline to appeal or the conclusion of the appeal, whichever is applicable.

**IT IS SO ORDERED.**

Dated: October 2, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE